JOHN JENKINS

*v.*

ELIZABETH JENKINS.

DIVORCE — *evidence should be satisfactory on charge of adultery.* On the hearing of a bill filed by a wife for divorce on the ground of adultery committed by the husband, the wife testified to having detected her husband in the act of adultery, on several occasions, with a woman employed in the house as a servant. The husband and the woman with whom the adultery was alleged to have been committed both denied the charge of adultery and there was no evidence tending to disprove their denial except that of the wife, and her testimony was improbable in its details: *Held,* that the evidence was not of that satisfactory character that ought to be produced to warrant a decree of divorce on so grave a charge as adultery.

APPEAL from the Circuit Court of Cook County; the Hon. E. S. WILLIAMS, Judge, presiding.

This was a suit in chancery instituted in the court below, by Elizabeth Jenkins, for a divorce from her husband, John Jenkins. The principal ground relied upon was the alleged adultery committed by the defendant. The court granted the divorce, and the defendant appealed.

Mr. ARTHUR D. RICH, for the appellant.

Messrs. A. & E. VAN BUREN, for the appellee.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

Two grounds for divorce are set forth in the bill in this cause: first, extreme and repeated cruelty; and, second, adultery. No evidence was offered on the first cause, with

a view to a divorce for that cause, but the trial was as to whether defendant had been guilty of adultery since his intermarriage with complainant.

The parties were married in 1867. Complainant was then a widow with children by a former husband, some of whom she brought with her to defendant's home. Soon after their marriage, difficulty sprang up between them, partly on account of the treatment of the children. Accusations of unkind treatment of his wife were made against defendant, and, it appears, a bill for divorce was filed by her, charging him with extreme and repeated cruelty towards her. That suit was in some way settled without a trial, and bill dismissed. Complainant returned to live with defendant again, but with no better success. In 1872 she filed another bill for divorce against defendant, charging him, as before, with extreme and repeated cruelty towards her. Under an order of court, defendant was compelled to, and did, furnish complainant with liberal temporary alimony and counsel fees. A trial was had in the latter case before the court, without the intervention of a jury, when defendant was found not guilty and the bill dismissed. On the same day the decision was rendered, complainant returned to defendant's house, and succeeded in reaching there before his arrival. That was about November 6, 1874. Thereafter no friendly relations existed between the parties. A room as good as any in the house was assigned to her. She had her meals with the family, and while some complaint is made that defendant discriminated against complainant in waiting upon her at the table, the weight of the testimony is, he treated her with respectful consideration, and waited upon her as he did others.

A young woman was employed as help in the house, and it is with her it is charged defendant was guilty of adultery. Complainant testifies illicit intercourse began between them within two weeks after her return to defendant's house, and although she says she detected them on many occasions *flagrante delicto*, she never mentioned what she saw to any

one, but " put it down on her memorandum." It was not until May, 1875, she left defendant's house, and filed this bill against him charging him with adultery.

During all that period complainant was at her husband's house the last time, from November to May, there were a number of persons inmates of the house, most, if not all, of whom were examined as witnesses at the trial. No one of them corroborates in any essential matter the testimony of complainant, except the boy Frank Long. But his testimony was not only improbable, but it was very much discredited by other testimony. He had been discharged from defendant's service, was angry on that account, and blamed the hired woman for it. No other witness of all those examined ever saw any improper intimacy between defendant and the young woman, although their opportunities for seeing such things, had they existed, were quite as good and perhaps better than his. Neighbors resided in the immediate vicinity that were familiar with the family and often at the house, but not one of them ever saw any improper conduct between the parties implicated, except the witness Johnson, who, according to his testimony, witnessed one instance of undue familiarity between them, but it was not such an act as reflected upon their integrity of character. It was shown this witness was not on friendly terms with defendant.

Both defendant and the woman implicated with him deny all illicit intercourse, and most solemnly asseverate the " charge of adultery is a cruel and malicious slander, purely fictitious and wholly false." There is no testimony in the record that tends to disprove their positive and unequivocal denials of guilt, except the testimony of complainant herself. But that is improbable in its details. It seems incredible that any one could be so utterly depraved as to be guilty of the conduct alleged against defendant and his house-keeper in places where persons were constantly passing and repassing, and in plain view of his own wife. The residence of defendant is situated in a thickly settled neigh-

borhood, some families residing not further than the usual block from him. He has resided there, and some of his neighbors have known him, for a great number of years, and had he been so depraved and beastly in his conduct as the testimony of complainant represents him, his character in that regard must have become known. . There is no testimony save that of complainant that tends to impeach his character as a reputable citizen. In the absence of proof to the contrary, the presumption will be indulged his character is good, and it ought now to avail him something when charged with having been guilty of such shameless lewdness. Character that is the growth of a life-time, if it is worth anything, it is under such circumstances.

Prior to her marriage with defendant, complainant had resided in Canada. Since her residence in this State, she has twice, in the brief period she has been the wife of defendant, applied by bill for divorce, and in both efforts was unsuccessful. In the former bills the charge against defendant was extreme and repeated cruelty towards his wife, but that ground was abandoned in this case. On the hearing the former bill was dismissed, and that was conclusive as to the charges it contained. In the present bill a new position was taken, and defendant is charged with adultery.

There is testimony in the record, if it is worthy of belief, that tends to show complainant attempted to suborn witnesses to prove the charge now alleged against her husband. How that may be we can not know certainly, but that evidence was produced. On the whole record, we are of opinion the evidence before us is not of that satisfactory character that ought to be produced to warrant a decree for divorce on a charge so grave as the one preferred against defendant.

The decree as to divorce and allowance of counsel fees as well as all alimony, will be reversed, and the cause remanded. Defendant ought not to be required to pay further counsel fees or alimony.

*Decree reversed.*