GEORGE B. ABBOTT

*v.*

CORA BELLE ABBOTT.

*Opinion filed October 24, 1901.*

1. DIVORCE—*when condonation of offense of cruelty will be avoided.* Condonation of the offense of cruelty is avoided where the forgiven party is subsequently guilty of such conduct as to lead the condoning party to believe that the offense will be repeated.

2. SAME—*what evidence does not establish avoidance of condonation.* Condonation of the husband's act of cruelty is shown by proof that the wife continued to live with him for three years after the last act of violence without in any way attempting to enforce her right to a divorce; nor is such condonation avoided by evidence that the morning before the wife left the husband he had told her if she did not sign a certain deed she might "leave and take a divorce," and that he was very "cool and deliberate" in his statement.

3. SAME—*divorces cannot be granted for sentimental reasons.* The duty of parents to their children and to society demands that they should not be divorced except for statutory reasons.

*Abbott* v. *Abbott,* 95 Ill. App. 52, reversed.

APPEAL from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of St. Clair county; the Hon. M. W. SCHAEFER, Judge, presiding.

HAMILL & BORDERS, FORMAN & BROWNING, and TURNER & HOLDER, for appellant.

DILL & WILDERMAN, and B. O. DAVIDSON, for appellee.

Mr. CHIEF JUSTICE WILKIN delivered the opinion of the court:

This appeal is from the Appellate Court for the Fourth District to reverse a judgment of that court affirming a decree of the circuit court of St. Clair county granting a divorce to the appellee, Cora Belle Abbott, from her husband, the appellant. The bill charged extreme and repeated cruelty. The answer denied the acts of cruelty alleged, and denied that defendant at any time, in any manner, abused or ill-treated complainant.

The parties were married in the State of Kansas, October 10, 1880. He was at that time a school teacher, and neither he nor his wife had any considerable amount of property. They lived in that State until about ten years prior to the filing of this bill, during which time he acquired the title to a considerable amount of real estate. While living there, there were born to them two daughters and a son, the latter having died at about the age of seven years. Upon leaving Kansas they moved to East St. Louis, where he engaged in the coal business, and accumulated additional property of the value of several thousand dollars, which, together with most of his Kansas lands, he deeded to his children. A considerable part of this property has been deeded to the wife by one of the daughters. He is therefore left without property, except, perhaps, eighty acres of Kansas land. Upon the hearing the complainant testified that about six years prior to that time he struck her twice in anger, and that

about one year later, when they were living on Goethe avenue, East St. Louis, he again struck her. She also says that three years ago he knocked her down and struck her in the face with his fist, the quarrel at that time growing out of a controversy over the two daughters practicing on musical instruments. There is no proof of acts of cruelty subsequent to that time. Her daughters, sixteen and eighteen years of age at the time of the trial, corroborate their mother. In his testimony defendant denies each of the acts of cruelty, and says that, upon the contrary, he always treated her with kindness and affection. There is much testimony in the record by neighbors and relatives strongly tending to support his statements, and to prove that he was a kind and indulgent husband and father, and that he liberally educated his daughters and provided a comfortable home for his family; but as the specific acts of cruelty are sworn to by the three witnesses and only denied by one, we must accept the fact of extreme and repeated cruelty as being sufficiently established by the evidence. We cannot, however, escape the conviction that the complainant was herself often to blame for the unhappiness in the family. There is also evidence in the record to the effect that defendant at times used abusive language to her, calling her vile names; but there is no direct evidence as to the use of such language after the last act of violence testified to by her and the daughters, about three years prior to the hearing.

We are of the opinion that, conceding the extreme and repeated cruelty as charged in the bill, the evidence of condonation is such as to defeat a decree for divorce on that ground in the wife's favor. It is true that condonation is always the forgiveness of an offense upon condition that it will not be repeated, and we have held that where an offense has been condoned, such as cruelty, and the party forgiven has subsequently been guilty of such conduct as to lead the wife or husband condoning

the offense to believe that it will or may be repeated, the condonation will be thereby avoided. In *Farnham* v. *Farnham*, 73 Ill. 497, it was held that condonation of personal acts of violence and cruelty may be avoided by abusive language and opprobrious epithets. Cruel treatment does not always consist in actual violence, and a wife having forgiven her husband's acts of physical cruelty, may, from the subsequent use of abusive and brutal language and charges of infidelity, conclude that it will end as on the former occasion,—in personal violence. In such case she is not bound to submit to actual violence as a condition to relief in a court of equity. (See, also, *Sharp* v. *Sharp*, 116 Ill. 509.) In this case, while the wife says, "He tormented and nagged me to death—I mean scolded, quarreling, picking fusses all the time," yet she does not pretend to state any particular act or threat made by him calculated to inspire her with the fear that his acts of cruelty would be repeated. So far as we are able to gather from this evidence, while the parties did not live happily together there was no language used or threats made by the husband between the time of the last act of violence and their separation, from which it can be said, within the rule announced in the *Farnham case*, that she had reason to believe that he would repeat the acts of cruelty. In *Youngs* v. *Youngs*, 130 Ill. 230, where acts of cruelty had been proved, we said (p. 236): "The evidence tends to show, and is, as we think, sufficient to establish, condonation. The last act of personal violence to the complainant proved, took place some time in December, 1886; but the evidence shows that the complainant continued to live and cohabit with the defendant until she left him, about the first of the following March. No subsequent conduct on the part of the defendant is shown which can be held to be sufficient to do away with such condonation, and we think the chancellor was correct in holding it to be a bar to the complainant's right to relief."

It is difficult to see how condonation for an act entitling a party to a divorce could be more clearly shown than in this case. For three years after the last act of cruelty the complainant continued to live with the defendant, and, so far as the evidence shows, without complaint or in any way attempting to enforce her right to a divorce, which at that time was complete and fully within her power to establish. An effort is made, as we understand counsel, to show that at the time she abandoned him, September 5, 1899, his conduct was such as to justify her in apprehending a repetition of the former acts of cruelty, but we find nothing in the evidence justifying such a conclusion. She says he at that time wanted her to sign a deed for certain property. "He came upstairs and said, 'Belle, I am going to sell the lake bottom farm.' I told him I would not sign it until he gave me a piece of property, and I would not sign away all the rights I had unless he would fix it so I could have something. He said he was going to sell that farm, and I said, 'If you do, sir, it will be done without my help,' and he said, 'Now, I will tell you, I won't live with you any longer in that way; you have got to sign that deed, or any and all the deeds I want you to, or you can leave and take a divorce.' He was very cool and deliberate over that, like he planned it. It occurred in the afternoon of the fourth of September and I left on the morning of the fifth." In this statement she is corroborated by her daughters. But what is there in it tending to show that she was subjected to or threatened with any violence? He simply said if she would not sign the deed she could leave and take a divorce, and in making the statement he was very "cool and deliberate." If the question was whether she was living separate and apart from him without her fault, seeking to maintain a bill for separate maintenance, his conduct on that occasion might sustain such a charge; but we cannot say that his language and conduct at that time would justify her in avoiding the

condonation for the act of cruelty committed three years previous thereto.

Much is said in the argument of counsel about a letter introduced in evidence, purporting to have been written by the husband to his wife's sister on the 12th of August, 1887, dated at Mound Ridge, Kansas, in which counsel for complainant claim he made many vile charges and insinuations against his wife, and that the letter throughout shows that his conduct was wholly unjustifiable towards his wife. We do not understand the letter to reflect upon the character of the wife in the sense that her counsel seem to understand it; but conceding all that they claim in that regard, it is clear that the wife, who saw the letter before it was mailed and who during all these years has had full knowledge of its contents, did not regard it as furnishing any excuse or justification for abandoning the defendant or making it in any way a ground for divorce.

It is very clear, from all the evidence in this record, that these people to a certain extent lived unhappily together; but it is the policy of our statute, and the good of society demands, that divorces shall not be granted from mere sentimental considerations. The duty of these parents to their children and to society demands that they should not be divorced except for statutory reasons, and that the forgiveness, which continued for three years prior to the filing of this bill, should be a bar to a decree now.

We are convinced that the circuit and Appellate Courts were in error in granting the decree, and it will accordingly be reversed. The cause will be remanded to the circuit court with directions to dismiss the bill.

*Reversed and remanded.*