# John Eames v. Henrietta Eames.

### Gen. No. 13,266.

1. CONDONEMENT—*what essential to establish.* A condonement arises from the resumption of the marriage relation with full knowledge of any adulterous acts imputable to the party whose offenses are condoned.

2. CONDONEMENT—*what establishes.* Connivance at the commission of adultery constitutes condonement thereof. No special act of connivance is necessary to be proven. A ready forgiveness or an apparent indifference to acts of adultery, known to the complaining party, followed by the continuance of the marriage relation, will be sufficient to establish condonement.

3. ADULTERY—*what does not establish charge of.* In no event can the unsupported testimony of the charging party, when met with the denial of the party accused of adultery, and with other corroboration warrant a decree of divorce upon so serious a charge.

4. ADULTERY—*what excuses.* Adultery is excused where it appears that the party charging the same connived at the commission thereof.

5. ADULTERY—*what does not excuse.* The condonation by the wife of her husband's adulterous offenses, does not give her any license to offend in like manner.

Divorce proceeding. Appeal from the Superior Court of Cook County; the Hon. JOSEPH E. GARY, Judge, presiding. Heard in this court at the October term, 1906. Reversed and remanded. Opinion filed May 13, 1907.

H. F. DICKINSON, for appellant.

No appearance by appellee.

MR. JUSTICE HOLDOM delivered the opinion of the court.

The contestants here are husband and wife. The husband filed a bill for divorce against his wife, September 11, 1905, charging her with drunkenness and cruelty. On October 16, 1905, the wife answered, denying the acts charged in the bill as constituting grounds for divorce, and averred that he had been guilty of cruelty toward her. Thereupon on November 23, 1905, the husband filed an amended bill which, after

reiterating the charges made in the original bill, adds a
charge of adultery.. December 8, 1905, the wife answered,
categorically denying all the charges made, including those
of adultery. On February 25, 1906, Mrs. Eames filed her
cross-bill, asking for separate maintenance on the grounds of
her husband's cruelty, intoxication and adultery, one of the
charges of adultery being as follows: "That said John H.
Eames committed adultery with divers persons and at divers
places unknown to cross-complainant," and then proceeds to
charge acts and situations which by implication subject him
to the suspicion at least of having committed adultery with
Catherine Bence, Betty Lewis and a Miss Fargo. While
adultery is not directly charged against him with these three
women, actions with them and situations in which they are
averred to have been discovered, if true, are such that adul-
tery may be inferred, without exculpatory evidence in con-
tradiction.

On March 2, 1906, Mrs. Eames filed an amended cross-
bill amplifying the original charges. March 5, 1906,
appellant answered in denial of all the material averments
of the cross-bill as amended. Issue was joined by the repli-
cations of the parties to the several answers, and the cause
and cross cause upon the issues thus made proceeded to trial
before the court and jury. The jury rendered two verdicts,
in which they found both parties guilty of adultery. Upon
these verdicts the court entered decrees dismissing both the
original and cross-bills as amended for want of equity.
From the decree dismissing appellant's original bill for want
of equity this appeal is prosecuted. Appellee, seemingly
resting content with the action of the court on her cross-bill,
has abided by its order. She also fails to appear here and
defend this appeal.

The parties were married at Milwaukee, January 10, 1899,
following very closely upon a divorce between appellee and
a Mr. Chittenden. This marriage was appellant's first
conjugal alliance. After the marriage they came to Chicago
and lived around at hotels. Appellant was a traveling man
and frequently away from Chicago on business trips. The

honeymoon seems to have been unhappily passed in many quarrels, bickerings and recriminations. . A Mrs. H., a former mistress of appellant, was a bone of contention between them.    In June, 1901, appellant, believing that his wife had been intimate with other men and to have committed adultery with them, ceased to live with her.    Thereupon she filed a bill for separate maintenance against him.    Soon after this they became reconciled and resumed cohabitation and continued to live in the marital relation until August 15, 1905.    Appellant on the latter date being convinced that his wife had proved recreant to her marriage vows and had been guilty of adultery, refused to consort with her any more.    On July 24, 1905, appellee made a journey to Europe, with the consent of her husband, and it was on her return from this trip that appellant claims to have discovered his wife's lapses from virtue post-dating the time of their reconciliation.    The jury by their verdict and the trial court by its decree have found appellee guilty of adultery as charged in appellant's bill.    By this decree she is bound.    The bill charges, and the evidence demonstrates beyond any doubt, that appellee committed adultery at the family residence, 3952 Michigan avenue, Chicago, with a J. M. Scatchard in April, 1905, E. A. Condex on February 2, 1905, and with Harry H. Graham May 31, 1905, and that appellant did not discover or know of his wife's conduct in this regard until after her return from Europe, and that promptly upon learning of it, discontinued living with her.    So that unless appellant has been guilty of adultery, not condoned, he is entitled to a divorce under the verdict of the jury on the issues joined in his original bill as amended.

The issues submitted to the jury were confined to the criminations and recriminations of adultery found in the affirmative pleadings of the parties, and the jury by their verdict adjudged them both guilty of adultery.

The only question which concerns us is; does the evidence, with all the intendments reasonably inferable from it, sustain the charge of adultery against appellant, and if it does,

has appellee condoned the adultery established by such evidence.

Appellant's early matrimonial days seem to have been handicapped somewhat by the lingering reminiscence of his bachelorhood in the person of a mistress, a Mrs. H., whom he was seeking to discard without that abruptness which his married condition demanded, and of sparing as much as he reasonably could the sensibilities of the late partner of his unhallowed and unlawful love. This entanglement was known to appellee, as also the visits of appellant to the bower of his former mistress, where he sojourned for varying periods of time, gradually diminishing until Mrs. H. was finally discarded and her shadow passed and no longer hovered over or darkened the lives of the two who bore to each other the lawful relationship of husband and wife. If adultery was proven with her, it was freely forgiven and unconditionally condoned.

About six weeks after their marriage, appellee says, appellant sought to excuse himself from his wife's society one evening, under the pretense of an engagement. Appellee testifies that she insisted on going with him, and that he took her to a gilded place of vice, where both sexes indiscriminately mingled in drinking, revelry and debauchery. That on entering this place, called the "Everleigh Club," she observed several women very scantily clothed. That appellant ordered a bottle of wine, seemed familiar with the inmates, was saluted by them as "Jack," and that a woman he called "Marie" sat upon his knee. After witnessing these immoral actions on the part of her husband, she left the place and went to her home at 4417 Indiana avenue. We search the record in vain for any conduct on the part of appellee indicating that her moral sensibilities were at all shocked by her environment or what she there witnessed. This event did not seemingly occasion any interruption of their marital intercourse. Her sense of the moral proprieties does not seem to have been at all upset by her visit to that abode of immorality.

Previous to appellee commencing her suit for separate

maintenance in April, 1901, she claims to have had grounds
for suspecting that her husband had been unduly intimate
with a colored maid in her employ named Betty Lewis. No
evidence of carnal acts with Betty Lewis are inferable from
the record, and a complete defense as to adultery with her,
were it proven, rests in the resumption of the marriage rela-
tion thereafter with full knowledge of any adulterous acts
imputable to appellant from his known relations with Betty
Lewis. Appellee used Betty Lewis to spy upon appellant,
as she says, but she failed to produce her at the trial or avail
of her knowledge of any incriminatory acts of appellant, if
there were any.

Next is charged, and some evidence supporting the charge
given, improper relations with another house maid named
Catherine Bence. Appellee claims to have discovered her
husband in this maid's room several times, but she did not
separate herself from him on either of these occasions, but
continued to live with him. She claims to have confronted
him with many letters which she purloined from his trunk in
April, 1905, which she contended afforded proof of his adul-
terous conduct, and yet, after obtaining such knowledge and
with all the information in her possession which she had and
produced upon the trial, she continued to cohabit with appel-
lant as his wife until her subsequent trip to Europe, and
from many places abroad wrote him quite a number of let-
ters filled with affectionate and endearing terms, with some
very malodorous suggestions as to her own conduct, and
much slang, but barren of any reference to appellant's slip-
pings from the virtuous path. Condonation in full measure
is the only conclusion to be drawn from this conduct of
appellee.

The remaining charge of adultery relates to Miss Fargo.
Appellee admits that Miss Fargo was her friend and had
been an inmate of her home as her guest. With her she
says she slept on the occasion when Scatchard, with whom
she sustained adulterous relations, was at her home and was
there discovered by her husband upon his unexpected arrival
in the morning. It is charged that appellant met Miss Fargo

in the fall of 1904 at the Exposition in St. Louis, paid her hotel bill there and came to Chicago with her, traveling in the same sleeper at night and taking her to the family home to breakfast in the morning, during the absence of appellee. What are the facts? Appellant learned of Miss Fargo's presence in St. Louis through a telegram sent to him by his wife, and in looking Miss Fargo up, taking her to dinner and escorting her to Chicago, he was but carrying out the expressed wish of his wife. Appellee's charge of adultery of appellant with Miss Fargo rests in her own evidence, based on suspicion, and is met with the unqualified denial of Miss Fargo, Alma Moore, the house servant, and appellant, and condonation by appellee. They lived, after this occurrence in the fall of 1904, in the conjugal relation until appellee's departure for Europe in July, 1905. By appellee's actions she gives denial to her charge of adultery of her husband with Miss Fargo. Mrs. Eames testifies: "When I went to Europe everything between us was perfectly lovely." There is a note of insincerity about appellee's charges of adultery. In her cross-bill she charges the adultery as being with persons and at times unknown to her, and by her own evidence flatly contradicts this averment. She offers no proof except as to persons and events within her knowledge when she filed her cross-bill.

In no event can the unsupported testimony of the charging party, when met with the denial of the party accused of adultery, and with other corroboration, warrant a decree of divorce upon so serious a charge. Jenkins v. Jenkins, 86 Ill., 340.

The evidence abundantly sustains the defense of condonation, and in some instances, notably the improprieties indulged at the Everleigh Club, raises a strong suspicion of connivance.

Connivance may be adjudged from either consent or indifference in relation to conduct complained of. Dennis v. Dennis, 60 Conn., 194.

No special act of connivance is necessary to be proven. A ready forgiveness or an apparent indifference to acts of

adultery known to the complaining party, followed by a continuance of the marital relation, will be sufficient to establish condonance.    Abbott v. Abbott, 192 Ill., 439.

The condonation of the husband's adulterous offenses by the wife did not give her any license to offend in like manner in breaking her marriage vows, or justify her in being less guardful of her virtue.    She was in law just as much bound not to carnally sin as she would have been had her husband not transgressed in this regard himself.    In the language of Jones v. Jones, 18 N. J. Eq., 33, "it is better to hold that where the erring party is received back and forgiven, the marriage contract is renewed and begins as *res integer,* and it is for the party and not for the court to forgive the new offense."    Cummings v. Cummings, 135 Mass., 386.

We think some of the instructions are open to strictures made upon them, but in the disposition we shall make of this appeal we do not regard it as necessary to discuss them.

The verdict on the cross-bill finding appellant guilty of adultery, finds no support in the evidence.    The adulteries charged, if proven, were undisputably condoned.    Appellant was entitled to a decree of divorce from appellee for her adultery upon the verdict of the jury upon his bill, and in dismissing his bill for want of equity the chancellor committed error.    The cross-bill of appellee was dismissed, as it should have been.

For the errors indicated the decree of the Superior Court dismissing the amended bill of appellant for want of equity is reversed, and the cause is remanded to the Superior Court with directions to enter a decree divorcing appellant from appellee for her adultery, conformable to the verdict of the jury rendered on the original bill of appellant as amended.

*Reversed and remanded, with directions.*