(No. 17050.—Reversed in part and remanded.)
SALLIE YOUNG, Appellee, *vs.* HORACE GREELEY YOUNG,
Appellant.

*Opinion filed December 23, 1926.*

1. DIVORCE—*when freehold is involved in decree of divorce.* A freehold is involved where a decree of divorce directs the conveyance by the defendant to the complainant of an undivided one-half interest in land in lieu of alimony and where errors are assigned upon the award of alimony and the rendition of the decree.

2. SAME—*what is condonation.* Condonation, in the law of divorce, is the forgiveness of an antecedent matrimonial offense on condition that it shall not be repeated and that the offender shall thereafter treat the forgiving party with conjugal kindness.

3. SAME—*when a complainant may charge misconduct prior to condonation agreement.* Whether a complainant seeking a divorce after having entered into a condonation agreement may charge the prior misconduct along with offenses subsequent to the agreement depends upon the facts, but the later misconduct, while it need not be of the same class or character as the condoned offenses nor be sufficient, alone, for divorce, must amount to more than slight acts of coldness or unkindness or mere quarreling.

4. SAME—*indebtedness of husband should be considered in fixing alimony.* The allowance of alimony is based on the principle that the husband shall furnish his wife a suitable support corresponding in degree with his pecuniary ability and social standing, and while the husband is not relieved of his duty to his wife by the fact that he owes debts, his indebtedness must be considered in fixing the amount of alimony.

5. SAME—*when the question of alimony should be reserved for future determination on account of husband's indebtedness.* A decree which gives the divorced wife, as alimony, substantially all of her former husband's property is erroneous, and where the husband has already conveyed the wife an undivided one-half interest in the only unencumbered property he owns and the balance of his estate is scarcely sufficient to pay his indebtedness, solicitor's fees and alimony should not be awarded the wife, but the question of alimony should be reserved for future consideration as changes in the circumstances of the parties may warrant.

6. SAME—*when the wife should not be allowed solicitor's fees.* While the court may require the husband to pay the wife such sums of money as will enable her to maintain her suit for divorce, she should not be allowed solicitor's fees when she is more able than her husband to pay them.

APPEAL from the Circuit Court of Pulaski county; the Hon. D. T. HARTWELL, Judge, presiding.

D. B. REID, and FRED HOOD, for appellant.

C. S. MILLER, and CHARLES L. RICE, for appellee.

Mr. JUSTICE DeYOUNG delivered the opinion of the court:

Sallie Young filed her bill for divorce on January 3, 1924, in the circuit court of Pulaski county against Horace Greeley Young, her husband, charging him with adultery and extreme and repeated cruelty. The bill also alleged that the defendant was the owner of ninety acres of land of the value of $6000, of an undivided one-half interest in an eighty-acre tract of land worth $3000, and of personal property valued at $3000; that she was without means; that the defendant refused to contribute to her support and that he threatened to sell and convey his property. In addition to a divorce the prayer of the bill was for an injunction, alimony and solicitor's fees. The defendant filed an answer denying cruelty but admitting adultery on his part in May, 1922. He averred that the complainant had instituted an earlier suit for divorce on the same charge of adultery; that during the pendency of that suit, on April 21, 1923, he entered into an agreement in writing with the complainant whereby all their past differences were settled and she condoned his adulterous acts, and that pursuant to and in accordance with that agreement he conveyed to her a portion of his real estate, worth $6000, in adjustment of their property rights, and she resumed her marital relations and thereafter cohabited with him as his wife. The defendant also filed a cross-bill, which alleged, in addition to the facts averred in the answer, that the parties lived together from April 21, 1923, the date of their agreement, until December 3, 1923, when the complainant deserted him

323—39

without cause; that the agreement was entered into by her with the fraudulent intent to extort from him both money and real estate and then to desert him, and that on or about April 1, 1923, she committed adultery with C. H. Turpin, of St. Louis, Missouri. The prayer of the cross-bill was for a divorce and general relief. After the cause was at issue a hearing resulted in a decree granting the complainant a divorce, awarding her the custody of two minor children, and directing the defendant to pay her $30 per month for their support, and, in addition to $50 theretofore paid, $150 for solicitor's fees. The decree further directed the defendant to convey to the complainant, in lieu of alimony for her support, his undivided one-half interest in the eighty-acre tract of land, to deliver to her as her separate property one-half of the household goods and furniture for the use of herself and the minor children, and to pay the costs of suit. The decree charged the sums of money awarded for the support of the children and the solicitor's fees as liens upon the defendant's land. From that decree he prosecutes this appeal.

A preliminary question must first be determined. Appellee asserts that no freehold is involved in this case, and that the appeal for that reason should have been taken to the Appellate Court. The circuit court directed the conveyance by appellant to appellee of an undivided one-half interest in an eighty-acre farm in lieu of alimony. Errors are assigned, among others, upon the award of alimony and the rendition of the decree. The result of the decree is to transfer the title in fee simple to land from one party to the other. By the decree appellee gains and appellant loses a freehold. A freehold is therefore necessarily involved in this case and the appeal was properly taken to this court. *Engler* v. *Engler,* 313 Ill. 527.

Appellee was married to appellant on August 9, 1899, and lived with him more than twenty-three years. She testified that she left him in November, 1922, when she heard

of his adulterous practices, and that prior to that time he had knocked her down and on different occasions had struck her with his fist.   Appellant admitted that he committed adultery with Alice Calhoun in May, 1922.   According to appellee's testimony, when the agreement of April 21, 1923, was made appellant promised to treat her kindly if she would return to him; that she did return but that he continued to quarrel with her; that early in December, 1923, he broke down the door to the room where she was asleep, at midnight, and in profane and opprobrious language upbraided her because Charles H. Turpin, who was her daughter's suitor, had given appellee a dress to replace some of her clothing torn by a dog Turpin had sent to her son; that on a Sunday in the same month he swore at her, picked up a piece of stovewood, rubbed his fist in her face, went to the room where he kept his shot-gun, swearing at the time, and only put the gun back when one of the children screamed.   Appellee left after this incident, in respect to which her testimony is corroborated by her daughters, Gladys and Alberta, and her son, Emeil, respectively seventeen, fifteen and twelve years of age.   The son also witnessed the breaking down of the door to his mother's bedroom and his father's conduct with reference to the dress Turpin had given her.   Emeil further testified that three or four years before, his father threw his mother down and hit her at other times; that to protect his mother, on one occasion he struck his father on the head with a poker, and that, so far as he knew, his father acted without provocation.

Appellant denied that he had knocked appellee down or had choked her but admitted that he had thrown her down twice; that he had slapped her about fifteen years before and was arrested, convicted and fined for the offense, and that he had more or less trouble with her ever since their marriage.   He testified that appellee told him that Dan Jackson had driven her around Chicago in his automobile about three years before the hearing; that she made a trip

from St. Louis to Jacksonville with Turpin in April, 1923, and that she told him that Turpin had plenty of money. Appellee, he stated, had a miscarriage on May 24, 1923, for which he was not responsible. With reference to the first incident, in December, 1923, he testified that he went up-stairs to appellee's bed-room, pushed the door open, asked her where the dress which Turpin had given her could be found, and upon being informed that it was in a trunk in the hall he told her that he had a notion to burn it, but that he put the dress back in the trunk and retired. Concerning the later incident, he stated that he picked up a stick, went out on the porch and threw it away, came back into the house, took his hat and told appellee that he would not harm her.

Dr. O. Karaker examined appellee in May, 1923, and testified that in his opinion she had a uterine hemorrhage brought about by a miscarriage. On cross-examination, however, the doctor admitted that the condition he found might have been produced by some other cause. Ida Adams, who resided in St. Louis, Missouri, testified that appellee visited her home for three days in April, 1923; that during this visit Turpin called on appellee several times, took her to a theater and to the station upon her departure, and sent her a box of flowers; that appellee's daughter was at the home of the witness at the same time, and that the daughter told the witness that Turpin was courting her. Ida Singleton, appellant's sister, testified that appellee told her that Dan Jackson sent her a forty-dollar dress, an eight-dollar silk sweater and a hat to make the trip to Chicago, about three years before the hearing, and that shortly after the agreement of April 21, 1923, was signed, appellee said that she would not live with appellant and had signed the contract merely to get the land. Leander Miller, a Methodist minister, told appellee shortly after the execution of the agreement that he was glad she had returned to her husband; that she replied that she would not stay, because

she could not get along with him. Ellen Williams, Mary Johnson and Rip Williams had conversations with appellee late in April or in May, 1923. They all testified that she told them she would not remain with appellant. Three other persons testified that they had witnessed quarrels between the parties.

Appellee was recalled and admitted that she attended a theater in St. Louis with Turpin; that he took her to the railroad station when she left and that he sent her a box of flowers. She testified, however, that her daughter accompanied her whenever she was in Turpin's company; that the trip to Jacksonville was made for the purpose of arranging for the transfer of another daughter from a hospital in that city to one in St. Louis, and that not only Turpin but two other persons went with her, and that the round trip was made in a single day. She denied any improper conduct or relations with Turpin or Jackson, and stated that she had kept two dogs for Jackson which he used in hunting in another part of the county, and that as compensation he sent some second-hand clothing for appellant and dresses for herself.

Appellant contends that the bill of complaint does not sufficiently charge extreme and repeated cruelty. The grounds for divorce alleged in the bill are adultery and extreme and repeated cruelty, and there was proof of both offenses. Appellant admitted that he had committed adultery and that he had thrown appellee down twice and had slapped her. There was evidence that he struck her at other times. He insists, however, that she condoned his adulterous acts in April, 1923, and thereafter cohabited with him as his wife. Condonation, in the law of divorce, is the forgiveness of an antecedent matrimonial offense on condition that it shall not be repeated and that the offender shall thereafter treat the forgiving party with conjugal kindness. (*Sharp* v. *Sharp*, 116 Ill. 509; *Farnham* v. *Farnham*, 73 id. 497; *Davis* v. *Davis*, 19 id. 334.) Although condonation

implies a condition which will permit the original charge
to be considered in connection with a subsequent offense
against the marital relation, the later misconduct must
amount to more than slight acts of coldness or unkind-
ness or mere quarreling. (*Abbott* v. *Abbott,* 192 Ill. 439.)
While the facts of each particular case must be considered
upon the question whether the former grievance is revived
by the subsequent conduct of the offending party, yet it is
not necessary that the misconduct succeeding condonation
shall be of the same class or character as that condoned,
or, standing alone, shall be sufficient to form an independ-
ent ground for divorce. The injured spouse has a right to
judge of the future by the past, and the court will connect
the whole of the unfaithful partner's conduct in order to
reach a correct conclusion. *Sharp* v. *Sharp, supra; Farn-
ham* v. *Farnham, supra;* 2 Schouler on Marriage, Divorce,
Separation and Domestic Relations, (6th ed.) sec. 1704;
*Davis* v. *Davis, supra.*

Appellant's conduct toward appellee since April 21,
1923, gave her the right, upon her bill for divorce, to re-
vive and to rely upon her prior grievances against him. By
his own admission he had committed adultery, and the evi-
dence, taken all together, shows him guilty of extreme and
repeated cruelty. He sought to sustain the counter-charge
in his cross-bill that appellee committed adultery by show-
ing that on a trip to Chicago she was driven around by
Jackson and that on a visit to St. Louis she was in the
company of Turpin. While these instances might have
aroused suspicion, yet they were explained by appellee, and
no inference of any adulterous relations on her part could
reasonably be drawn from them, and appellant's recrimina-
tion necessarily fails. The grounds for divorce upon which
appellee relied were sufficiently alleged in the bill, and the
evidence sustains those charges.

Finally, appellant insists that neither solicitor's fees nor
alimony should have been awarded appellee. In the bill of

complaint appellee alleges that appellant owned real and personal property of the value of $12,000. There was, however, no proof in support of the allegation. It appears from the evidence that prior to the agreement of April 21, 1923, appellant owned two farms,—one consisting of eighty acres and the other of ninety acres. The eighty-acre farm was improved by a house, two barns and other smaller buildings. This farm constituted the homestead and was free from encumbrance. The ninety-acre farm was unimproved and was subject to a mortgage of $2220 in principal and accrued interest. Two witnesses testified that the value of the former was $3200 and of the latter $2250. Appellant conveyed an undivided one-half of the eighty-acre farm to appellee pursuant to the agreement of April 21, 1923. This conveyance reduced the value of his interest in that farm to $1600. His personal property was worth $921, and his indebtedness to banks and other creditors, exclusive of the mortgage, was $2258.99. The evidence of these values and of his indebtedness is uncontradicted. Hence, at the time of the hearing appellant's real and personal property had a value, all together, of $4771; the mortgage on the ninety-acre farm and his other indebtedness amounted to $4478.99, leaving his net worth $292.01. The decree requires him to pay appellee an additional solicitor's fee of $150 and to convey to her his interest in the eighty-acre farm, worth $1600, thereby reducing his estate $1750 and resulting in an excess of his liabilities over his assets of $1457.99. This figure omits the award of one-half of the furniture to appellee and appellant's obligation to pay $30 per month for the support of the two minor children as well as the costs of suit. Apart from these items, compliance with the decree will give appellee an unencumbered improved farm worth $3200 and appellant will be rendered insolvent to the extent of $1457.99.

The allowance of alimony is based on the principle that the husband shall furnish his wife a suitable support corresponding in degree with his pecuniary ability and social standing. (*Herrick* v. *Herrick,* 319 Ill. 146.) The husband is not relieved from his duty to his wife by the fact that he owes debts, but his indebtedness must be considered in fixing the amount of alimony. (2 Schouler on Marriage, Divorce, Separation and Domestic Relations,—6th ed.—sec. 1820; *Garrett* v. *Garrett,* 252 Ill. 318.) A decree which gives the divorced wife, as alimony, substantially all of her former husband's property is erroneous. (*Ross* v. *Ross,* 78 Ill. 402.) By the conveyance of the undivided one-half interest in the unencumbered, improved farm, in accordance with the agreement of April 21, 1923, appellee acquired substantially all of her husband's estate. The portion of his estate which remained after that conveyance was scarcely sufficient to pay his indebtedness. While the court may require the husband to pay the wife such sums of money as will enable her to maintain her suit for divorce, yet she should not be allowed solicitor's fees when she is more able than her husband to pay them. (*Klekamp* v. *Klekamp,* 275 Ill. 98.) There is no allegation in the bill that appellant has an income. The evidence shows that his returns as a farmer are extremely meager and uncertain and that since the Great War his financial condition has steadily grown worse. The conveyance made to appellee should have been considered, and, under the facts and circumstances shown by this record, neither additional solicitor's fees nor alimony should have been awarded appellee but the question of an allowance of alimony to her should have been reserved for future consideration, as changes in the circumstances of the parties may warrant and as shall then appear to be proper and reasonable.

The decree of the circuit court is affirmed in all respects except as to the allowance of the additional solicitor's fees and the award of alimony to the appellee. For those errors,

and to their extent only, the decree of the circuit court is reversed and the cause is remanded to that court, with directions to proceed in conformity with this opinion.

*Reversed in part and remanded, with directions.*