## Irene Middleton, Appellant, v. Jacob K. Middleton, Appellee.

### Term No. 4904.

Opinion filed January 19, 1950. Released for publication February 20, 1950.

JOHNSON & JOHNSON, of Belleville, for appellant.

LINDAUER, LINDAUER & PESSIN, of Belleville, for appellee.

MR. PRESIDING JUSTICE BARDENS delivered the opinion of the court.

The plaintiff appellant brought her action for separate maintenance in the circuit court of St. Clair county against the defendant appellee on April 19, 1948. The complaint charged cruelty and desertion. Upon the filing of the complaint, the chancellor issued a temporary injunction restraining the defendant from

striking, injuring, or molesting the plaintiff and from entering the premises occupied by the plaintiff. Defendant filed his motion to strike the complaint for separate maintenance. On August 26, 1948, plaintiff filed an amended complaint for divorce on the grounds of extreme and repeated cruelty. In the amended complaint the plaintiff charged also that the defendant had obtained property from the plaintiff through fraud and deceit and asked that the court compel the reconveyance of this property to the plaintiff. The defendant filed an answer admitting the marriage and residence of the plaintiff and denying all other allegations. He made additional allegations concerning the property rights, to which the plaintiff filed a reply. The case proceeded to trial before the court without a jury on March 9, 1949. At the close of plaintiff's evidence, the defendant moved the court to dismiss plaintiff's complaint in respect to the divorce portion of the case for lack of proof of the allegations in the plaintiff's complaint. The court then made a finding that the plaintiff had failed to prove the defendant guilty of extreme and repeated cruelty, allowed the motion of the defendant and dismissed the complaint. From this order, plaintiff brings this appeal.

The evidence on behalf of the plaintiff consisted chiefly of the plaintiff herself who testified that the most serious act of cruelty occurred in July of 1947 when, she charged, the defendant grabbed her violently by the arms and gouged pieces of flesh out of her arm and left scars for three or four months. In this respect the plaintiff was corroborated by the other witnesses in the case to the extent that they testified to having seen the bruises and scars left upon plaintiff's body. The plaintiff testified to other acts of cruelty concerning which there was no corroboration and concerning which there was doubt about their intensity or violence. As an example of the latter, she testified about the

defendant shoving her through the bedroom to the kitchen and on the floor against the door casing but further testified that he helped her up after he saw that she wasn't hurt too bad. The evidence of plaintiff was also quite confusing as to dates because she fixed the dates of several of the acts in 1947 on her direct and cross-examination and in 1948 upon her redirect and recross-examination. On one occasion she explained on direct examination how and why she fixed it in 1947, and on recross-examination, another reason for fixing it on the date of 1948.

The above recitals of the evidence do not fully disclose the entire testimony but are recited for the purpose of showing that the evidence of the plaintiff was to some extent confusing and unsatisfactory with regard to the degree of cruelty exhibited.

██ The duty of the chancellor upon a motion made at the close of plaintiff's case has been definitely set forth in the case of *Fewkes v. Borah,* 376 Ill. 596, 600, where it is said that on a motion at the close of plaintiff's evidence in a chancery case, the chancellor should consider the evidence of the plaintiff in the light most favorable to the plaintiff. Upon a review of plaintiff's evidence and considering that evidence in its light most favorable to the plaintiff, it is our opinion that the chancellor should have required the defendant to produce his evidence except for another feature of the case which we will next discuss.

In the complaint the plaintiff alleges that the last act of cruelty was on March 15, 1948, and that thereafter she lived and cohabited with the defendant until April 18, 1948, when the defendant left her without reasonable cause. The plaintiff recognized there was a question of condonation in the case and specifically pleaded that the alleged desertion by the defendant on April 18 revoked this condonation. There were no acts of cruelty or threats by the defendant either alleged

or proved after March 15, 1948. The plaintiff relies upon desertion only as a grounds for the revocation of the condonation.

The question as to whether or not desertion for less than a statutory period required as a separate grounds of divorce will revoke condonation is one that has been the subject of disagreement among the various states although the majority of the states do recognize that such a desertion does revoke condonation. (See 27 C.J.S., Divorce, par. 62; 17 Am. Jur., Divorce and Separation, par. 213.) The courts of Illinois have never passed squarely upon this question. The cases in Illinois all hold that a condonation of cruelty is made on the implied condition that the offending party will thereafter treat the other party with conjugal kindness. *Ollman v. Ollman,* 396 Ill. 176; *Young v. Young,* 323 Ill. 608; *Abbott v. Abbott,* 192 Ill. 439.

In the case of *Abbott v. Abbott,* 192 Ill. 439, the court holds that condonation may be avoided where the party forgiven has subsequently been guilty of such conduct as to lead the other party to believe that cruelty will or may be repeated but also held that the evidence in that case was not sufficient to avoid the condonation because the offending party was "cool and deliberate." In the *Abbott* case the plaintiff-wife who was seeking the divorce had left the husband. The court stated that if she were seeking separate maintenance, the defendant's conduct in telling her that if she didn't sign a deed, she could "leave and take a divorce," might sustain that charge; but the court does not specifically pass on the question of whether such a constructive desertion in itself would avoid the condonation. It seems, therefor, there is no precedent in Illinois to guide us in this question.

In as much as the established rule of condonation implies that the offending party promises to treat the other with conjugal kindness, we are of the opinion

that whether or not an act of desertion subsequently revokes the condonation depends upon the facts and circumstances in each case. It is readily conceivable that the circumstances surrounding desertion on the part of the offending party might or might not constitute conjugal kindness.

In the case at bar, the evidence with regard to what transpired on the 18th of April 1948, shows that the plaintiff, together with her daughter by a previous marriage, went to see her mother. This was on a Sunday afternoon. When she returned from this visit, the defendant thought she had stayed away too long a time. The parties quarreled. The plaintiff prepared the defendant's supper and after supper there was more quarreling. The plaintiff told the defendant that she would go to see her mother whenever she wanted to and then she shut the door. The defendant got his hat and the plaintiff told him that he had better go uptown and cool off. He left and later came back in his truck and took his clothes from the closet, laid them on the bed and stated he had come to get the rest of his things in the drawer. The plaintiff then said, ''Now, listen, I have taken this for the last time.'' To this, the defendant replied, ''All right, I am through''; whereupon the defendant went out and put the things in his truck. The plaintiff testified when asked her reasons for requesting a temporary injunction, that she signed the sworn complaint for injunction to keep her husband away from the home. She said she signed the complaint for protection and that she desired an injunction to prevent him from coming back and living and sleeping in the home.

██  It appears from other evidence by the plaintiff that the defendant was a man of many moods and temperaments; that on several other occasions he had left the home for some period of time, during which time he slept in a shack situated on the premises where

his business was located. There is no charge that during any of these times he was guilty of any extramarital misconduct. On all previous occasions he had, apparently, after some deliberation or sulking, decided that he should return to the marital home. On the occasion in question on April 18, 1948, the plaintiff evidently had made up her mind that she was not going to permit his return. As noted, the defendant left on the evening of April 18 and the next day the plaintiff filed her suit for separate maintenance in which she prayed for an injunction. She asked that the injunction restrain the defendant from coming to the place where she lived but did not disclose by her allegations that this was the marital home of the parties. She persuaded the chancellor to issue an injunction which in effect prevented the defendant from returning to the marital home and literally prevented the defendant from making any move toward reconciliation or changing his mind and returning to the marital home after he had been gone for one night only.

The defiant attitude of the plaintiff on the night of his leaving coupled with her procurement of the injunction the next day does not constitute such a set of circumstances as would justify an avoidance of the condonation. Therefor the chancellor did not commit reversible error in dismissing the complaint. For these reasons the order of the lower court dismissing the complaint is affirmed.

*Order affirmed.*

SCHEINEMAN and CULBERTSON, JJ., concur.