## O'HARA ET AL. *v.* MACCONNELL ET AL., ASSIGNEES.

1. A decree in chancery will be reversed if rendered against a woman who is shown by the bill to be both a minor and *feme covert*, where no appearance by or for her has been entered, and no guardian *ad litem* appointed.
2. It is error to render a final decree for want of appearance at the first term after service of subpœna (Equity Rules, 18, 19), unless another rule-day has intervened.
3. Where the object is to divest a *feme covert* or minor of an interest in real estate, the title of which is in a trustee for her use, the trust being an active one, it is error to decree against her without making the trustee a party to the suit.
4. The making of the conveyance, as ordered by the decree, does not deprive the defendant of the right of appeal.
5. Neither a subsequent petition in the nature of a bill of review, nor any thing set up in the answer to such petition on which no action was had by the court, can prevent a party from appealing from the original decree.

APPEAL from the Circuit Court of the United States for the Western District of Pennsylvania.

The facts are stated in the opinion of the court.

Submitted on printed arguments by *Mr. J. W. Kirker* for the appellants. No counsel appeared for the appellees.

MR. JUSTICE MILLER delivered the opinion of the court.

Michael O'Hara was adjudged a bankrupt Dec. 9, 1867, and the appellees duly appointed assignees, to whom an assignment of his effects was made in due form. As such assignees, they filed in the Circuit Court for the Western District of Pennsylvania the bill in chancery on which the decree was rendered from which the present appeal is taken. The bill alleges that a conveyance of certain real estate made by said O'Hara and his wife, Frances, on the tenth day of July, 1866, to William Harrison and G. L. B. Fetterman, in trust for the use of the wife, was a fraud upon creditors, and prays that the deed be

declared void, and that O'Hara, his wife, and Barr, her guardian, be decreed to convey the land to complainants, that they may sell it for the benefit of O'Hara's creditors, free from the embarrassment created by said deed of trust.

The bill also alleges that Mrs. O'Hara is a minor, and that A. M. Barr is her legal guardian.

A subpœna was issued on the fifth day of April, 1869, and served on the 7th, on O'Hara, for himself and wife, and on Barr; and on the seventh day of May following, without appearance, and without answer by any defendant, the bill was amended, was taken as confessed, and a final decree rendered. This decree enjoined the defendants from setting up any claim to the land, and ordered all of them to convey and release the same to the assignees; and, in default of such conveyance within thirty days, Henry Sproul was appointed commissioner to do it in their name. A copy of this decree was served on the defendants May 10; and on the 14th of June the order was complied with, by a deed made by O'Hara, his wife, and Barr, which on its face purports to be in execution of the order, and for the consideration of one dollar. It will thus be seen, that within less than five weeks from the filing of the bill, and without any actual service of the writ or other notice on her, a decree was entered against a woman who was both a minor and a *feme covert*, without the appointment of a guardian *ad litem*, without any appearance by her or for her, depriving her of fourteen acres of land now within the limits of the city of Pittsburg. It is from this decree that she appeals.

By the thirteenth rule of practice of the courts of equity of the United States, as it stood when the subpœna in this case was served, a delivery of a copy to the husband was good, where husband and wife were sued together; but the rule was amended by this court in 1874, so as to require a personal service on each defendant, or by leaving a copy for each at his or her usual place of abode, with some adult member of the family. The service in the present case would not now be good, though it must be held to have been so at the time it was made.

It would be very strange if a decree obtained under such

circumstances could stand the test of a critical examination. We are of opinion that there are several errors sufficient to justify its reversal.

1. It was the duty of the court, where the bill on its face showed that the party whose interest was the principal one to be affected by the decree was both a minor and a *feme covert*, and that no one appeared for her in any manner to protect her interest, to have appointed a guardian *ad litem* for that purpose. If neither her husband nor he who is styled her guardian in the bill appeared to defend her interest, it was the more imperative that the court should have appointed some one to do it. There is no evidence in the record, except the statement in the bill, that Dr. Barr was her guardian. If he was not, then there was no one served with notice, whose legal duty it was to defend her. If he was her guardian, there is no evidence of the precise nature of his duties or power, as there are several classes of guardians. As to the particular property now in contest, she had a trustee, in whom the title was vested for her use, and whose duty it would have been to protect her interest in it; but, strangely enough, he was not made a party. It was, therefore, error in the court to proceed to a decree without appointing a guardian *ad litem*. 1 Daniell's Ch. Pr. 160, c. 4, sect. 9; *Coughlin's Heirs v. Brents*, 1 McLean, 175; *Lessee of Nelson v. Moore*, 3 id. 321.

2. If Mrs. O'Hara had been under no disability, it was error to have entered a final decree for want of appearance on the return day of the writ, or during that term.

"According to the practice of the English Chancery Court," says Mr. Justice Washington, in *Pendleton v. Evans's Ex'r*, 4 Wash. C. C. 337, "a bill cannot be taken *pro confesso* after service of subpoena, and even after appearance, until all the processes of contempt to a sequestration have been exhausted; after which the bill is taken *pro confesso*, and a decree passes which is absolute in the first instance." He then comments on the practice of the New York Chancery Court, which, instead of a proceeding in contempt, required a rule to answer to be served on the defendant; and, if this was not obeyed, the bill might be then taken *pro confesso*. He then adds: "The principle which governs the practice in both these courts is, that

the defendant shall not be taken by surprise, but shall have sufficient warning before a decree is entered against him by default." He then states the practice by the rules adopted by the Supreme Court for the Federal courts, as follows: "If the answer, the subpoena being returned executed, be not filed within three months after the day of appearance and bill filed, then defendant is to be ruled to answer, and, failing to do so, the bill may be taken for confessed, and the matter thereof decreed immediately; but this decree is only *nisi*, to be made absolute at the term succeeding that to which service of a copy of the decree shall be returned executed, unless cause to the contrary be shown." And in the case of *Read* v. *Consequa*, 4 Wash. C. C. 180, where a bill on which an injunction had been allowed had remained unanswered, and without appearance of defendant, who had been duly served five years before, he refused to grant an order taking the bill *pro confesso* because it would be irregular.

What a contrast to the speed with which the decree was entered in the case before us!

Rules 18 and 19 of the equity practice as now existing have modified those which are mentioned by Judge Washington, and, unless the defendant demur, plead, or answer, on or before the rule-day *next succeeding his appearance*, the plaintiff may enter an order in the order-book that the bill be taken *pro confesso*, and the matter thereof decreed at the *next* succeeding term. But in the case before us the final decree was entered on the day fixed for appearance, or, at most, at the same term.

The standing rule now requires defendant to plead by the next rule-day after appearance, which is the same as if a special rule were taken on him to do so.

It is, therefore, clear that final decree could not be made, even under the present rules, until the term of the court next succeeding the day of default.

The remarks of Mr. Justice Washington show that these rules are not merely technical and arbitrary, but are made to prevent a defendant from losing his rights by surprise.

3. The legal title to the property in question was held by Fetterman, in trust for Mrs. O'Hara. The trust was not a

naked or dry trust; for he was empowered, with her consent, to sell it, and reinvest the proceeds on the same trusts, or to mortgage it, and with the money so raised purchase other real estate.

How the decree can clear the property of this trust without having the trustee before the court it is difficult to see. This was the object of the suit; but how can it be made effectual for that purpose in the absence of the person in whom the title is vested?

We think that, in a case like this, where a woman, under the double disability of coverture and infancy, has a trustee in whom the title of the property in controversy is vested for her use, the court should have refused a decree until he was made a party.

It is said, that, after making the deed which the court ordered, the appellant is bound by it, and cannot now prosecute this appeal.

The principle is unsound. The deed recites on its face that it is made under the order of the court. The parties must either have obeyed the order of the court, or taken an appeal and given a *supersedeas* bond in a sum so large that they were probably unable to do it.

"In no instance within our knowledge," says the court, in *Erwin* v. *Lowry*, 7 How. 184, "has an appeal or writ of error been dismissed on the assumption that a release of errors was implied from the fact that money or property had changed hands by force of the judgment or decree. If the judgment is reversed, it is the duty of the court to restore the parties to their rights." That was a case where the appellant received the money which by the decree he recovered of the appellee, and is, therefore, a stronger case than the present, as his action would seem to ratify the decree.

About three years after this decree, appellants filed a petition in the Circuit Court in the nature of a bill of review to set it aside. To this petition the appellees filed an answer, in which, among other matters, they set out a copy of another deed made by O'Hara and wife the day after (as they allege) Mrs. O'Hara became of age, and they rely on that deed here as a bar to the appeal.

It is sufficient now to say, as to that deed, that it is long subsequent to the decree, and apart from it.  Its validity and force must stand or fall on its own merits, wherever and whenever they may be tried, in any issue made on them.  It has nothing to do with the appeal which regards the errors of the decree, and which the appellant has a right to have reversed.  When this is done, and she is placed where she ought to be in that regard, the effect of the deed now under consideration may, perhaps, be decided on a supplemental bill, setting it up as matter occurring since the commencement of the suit, or by the appellees dismissing their present suit and relying on the title acquired by that deed.

Another equally conclusive reason why we cannot consider any other matters arising under the petition and answer is, that there is no order, decree, or other action of the court on them.  The record closes with the bill and answer, the latter filed May 23, 1874, and the present appeal allowed Aug. 4, 1874.

We, therefore, take no notice of this subsequent pleading, but reverse the original decree, and remand the case to the Circuit Court for such further proceedings as to right and justice may appertain.  *Decree reversed.*