(No. 29834.—

GRACE L. OLLMAN, Appellee, *vs.* CLARENCE E. OLLMAN, Appellant.

*Opinion filed January 22, 1947.*

GEORGE D. CARBARY, and PAUL M. HAMILTON, both of Elgin, for appellant.

ARTHUR L. PAULSON, and W. BEN MORGAN, both of Elgin, for appellee.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

This is a suit for divorce filed by Grace L. Ollman in the circuit court of Kane county against her husband,

Clarence E. Ollman, charging him with extreme and repeated cruelty. The cause was tried by the court upon her amended complaint and his answer thereto, denying the ·cruelty. The hearing resulted in a decree granting plaintiff a divorce, awarding her the custody of their minor child, and directing defendant to pay $5 a week for its support. The decree awarded her the home, with the furnishings, and also $7000 in cash, in settlement of her property rights and for alimony in full, and required the defendant to convey to her all his interest in the home, the title to which was held by them as joint tenants. From this decree defendant has appealed directly to this court, a freehold being necessarily involved in the case.

The parties were married December 25, 1935. Appellee was a registered nurse and continued to work after the marriage, and her earnings, together with those of her husband and all other moneys of his, were held in a common fund, to which each had access. Property purchased after the marriage was taken in the name of both. They were both apparently interested in working and saving and lived together until August, 1942, when appellee became an expectant mother.

Appellant urged his wife to submit to an abortion. He declared he was too nervous to have a child around. He threatened suicide and told her he would rather be dead than alive. January 27, 1943, he left and went to Ohio, remaining away for nine months. The baby was born in April, and appellant did not see it until it was five months old. The reason given his wife for leaving was that she was having a baby and his nerves could not stand it. He testified that he was extremely nervous at the time, due to the flare-up of an old thyroid trouble from which he had suffered for years, and for that reason thought it best for them both to be separated, and that it was because of his extreme nervousness that he did not want the baby. Their savings, consisting of stocks and bonds and approximately

$12,000 in cash, which they kept in an iron safe in the home, were left with appellee. He, did not, during his absence, send her any money for support, as that was unnecessary, since abundant funds to which she had access were in her possession. While appellant was in Ohio he worked steadily, except for a part of time when he was in a hospital. In September, 1943, he came home and effected a reconciliation, then went back to Ohio for the purpose of arranging his affairs there, and returned to his home again in October, and he and appellee again resumed their life together as husband and wife. After the reconciliation, they again lived together with minor misunderstandings, until July 10, 1945, when appellee left, telling him she intended to get a divorce.

The complaint, as amended, alleged specifically that on or about January 15, 1943, appellant, in a fit of anger and without provocation on the part of appellee, violently pushed and shoved her, causing her pain and injury, and that on or about January 22, 1943, in a fit of anger, he violently beat and struck her, without provocation or fault on her part. The complaint also alleged generally that on numerous other occasions he had abused and mistreated her and caused her great embarrassment, humiliation, and mental anguish, and that after the birth of the child and appellant's return to his home, he proceeded to abuse and mistreat her.

The only evidence given to sustain the above charge of cruelty was the uncorroborated testimony of appellee, who testified that on January 15, 1943, appellant threatened to commit suicide and to leave and never come back; that she grabbed hold of him, and he got mad and grabbed her and threw her down, causing her pain and suffering, and that this was without provocation on her part, other than trying to induce him to stay. She also testified that he threw her down at other times, under similar circumstances, in January, 1943; that after he came back he held

two jobs a day, working sixteen hours a day, usually working on Sundays; that whenever anyone wanted him to work he would work, and would never take time to play; that he brought all the money he made home and she would often cash the checks; that he never took her any place and never wanted any company; that she asked him to go to a party and he said he would rather sleep; that he never paid any attention to the baby, would not speak to it, and when she asked him why he did not speak to the baby, would reply that he did not have time; and that sometimes he would not speak to her for two weeks at a time.

Appellant testified, denying unequivocally the alleged acts of cruelty. He swore that he never threatened his wife, never threw her down and never at any time committed any acts of cruelty or violence against her; that she would be sullen at times, the same as he; that she nagged as much, if not more, than he, and that she often refused to speak to him when he returned from work.

The foregoing substantially presents the evidence in the case upon the alleged grounds of divorce, and in this state of the record it can hardly be said that the charge of extreme and repeated cruelty is supported by the degree of proof required in a divorce case. Appellee testified to only one act of appellant causing her any pain and suffering. She states in her brief that she considers appellant's alleged acts of cruelty of little consequence and would not ask for a divorce on that account were it not for the other grievances of which she complains. However that may be, it is wholly immaterial whether appellant was guilty of the acts he is charged to have committed in January, 1943, or whether such acts constituted extreme and repeated cruelty, inasmuch as the offense, if committed, was condoned and no subsequent conduct on the part of appellant is shown which can be held sufficient to do away with such condonation.

Condonation, in the law of divorce, is the forgiveness of an antecedent matrimonial offense on condition that it shall not be repeated and that the offender shall thereafter treat the forgiving party with conjugal kindness. (*Young* v. *Young*, 323 Ill. 608.) If the condition is broken, then the condonation is to be deemed withdrawn or avoided and the injured party may avail himself of the remedy for the acts condoned, the same as if no condonation had occurred; but the later misconduct, to be sufficient to breach the condition and avoid the condonation, must amount to more than slight acts of coldness or unkindness or mere quarreling. (*Young* v. *Young*, 323 Ill. 608; *Abbott* v. *Abbott*, 192 Ill. 439.) So long as the condition remains unbroken, the condonation is an absolute bar to the remedy for the injury condoned. Condonation is not revocable at will. The injured party cannot forgive and condone the acts and at the same time reserve the right to assert them as a means of obtaining a divorce, if there be no further misconduct.

Appellee claims that the defense of condonation cannot avail appellant because it is not alleged in his answer, and says this position is supported by *Lipe* v. *Lipe*, 327 Ill. 39, and *Klekamp* v. *Klekamp*, 275 Ill. 98. It has long been the rule in chancery that an affirmative defense, to be availed of, must be set up by the defendant in his answer. (*Linder* v. *Barnett*, 318 Ill. 259.) If he does not apprise the opposite party of such defense and set it forth in his pleadings, he is precluded from urging the same even though it may appear to be within the evidence. ( *Hunsley* v. *Aull*, 387 Ill. 520.) This is true as a general proposition, but an action for divorce involves interests other than those of the parties litigant. The State, as the sovereign, has an interest in maintaining the integrity and permanency of the marriage relation. (*Floberg* v. *Floberg*, 358 Ill. 626.) A decree of divorce vitally concerns the minor children, if any, of the divorced couple, and affects, in a

general way, the home life and domestic relations of the people, the public morals, the prevailing system of social order, and in a greater or lesser degree, the welfare of every citizen. These interests are not represented by either of the parties to a divorce proceeding, but the law has not left them unprotected. It is within the power of the chancellor of whom a decree of divorce is asked to stand as a representative of the public, and, in a proper case, to refuse to grant the decree, though the grounds of such refusal be without the issues made by the pleadings of the parties. (*Decker* v. *Decker,* 193 Ill. 285.) In all divorce suits the public occupies the position of a third party. It does not plead, but is represented by the conscience of the court; and so, whenever a defense comes out in the evidence, whether alleged or not, it is fatal to the proceeding. (*Johnson* v. *Johnson,* 381 Ill. 362.) This is true, not because the defendant has any just right to take advantage of a defense which he has not pleaded, but because the public interest is involved, and the conscience of the court, appealed to by this interest, does not permit the divorce unless the facts represented on the whole record justify it. If it were otherwise, divorces would be granted in cases where the evidence disclosed that no right to a divorce existed, and the public good, which suffers from every dishonest divorce and from every one not as well within the spirit of the statute as within its terms, would be sacrificed to rules of procedure.

In each of the cases cited and relied on by appellee, (*Lipe* v. *Lipe,* 327 Ill. 39, and *Klekamp* v. *Klekamp,* 275 Ill. 98,) the defendant argued that his acts of cruelty had been condoned by the plaintiff, but did not set up the defense in his pleadings. This court in the opinion in each case stated that the defense of condonation, to be available to the defendant, must be set up by plea or answer and that the court would have been warranted in not allowing the defendant to make this defense without having

pleaded it or averred it in his answer. However, in neither the *Lipe* nor *Klekamp case* did this court refuse to consider the defense of condonation. In the *Lipe case* it was held that the subsequent misconduct of the defendant revived the previous offenses, and in the *Klekamp case* that the condonation was not proved. In the *Klekamp case* this court also stated that it was in the power and discretion of the court to dismiss the complainant's bill if it appeared that she had cohabited with him after her bill was filed, without regard to the question whether or not such defense was properly pleaded by the defendant.

The *Lipe* and *Klekamp* cases are not incorrect in holding that a defendant in a divorce action is not entitled, as a matter of right, to the defense of condonation when such defense is not alleged in his pleadings; but insofar as anything contained in those opinions would indicate that evidence of condonation appearing in a divorce suit must be disregarded by the court in rendering its decision unless condonation had been alleged as a defense, they are not in harmony with the public policy of this State and ignore the public interests involved in divorce cases. It is a doctrine of general acceptance that the State, whose duty it is to guard the marriage relation, is a party to every divorce suit, and that the interests of the State in such suit are in the keeping and under the protection of the court. Hence, whenever in the course of the trial, it appears that the action is collusive or barred, it is the duty of the court, regardless of the pleadings, fully to inquire, of its own motion, as the representative of the State, into the facts and circumstances and to act in accordance with the facts thus developed. In the instant case, it appears from appellee's own testimony that, were the charges of cruelty true, she had condoned them, and under these circumstances the court should, of its own motion, consider such fact in its decision of the case.

Analyzing this case on the entire record, we are of the opinion the record does not disclose sufficient evidence reasonably tending to prove that appellee is entitled to a decree of divorce. It appears from her own testimony that after the alleged acts of cruelty in January, 1943, appellant returned home in October, 1943, and they lived together as husband and wife from that time until July 10, 1945. The evidence discloses that there was during this period of time, incompatibility of tastes and temperament, and some quarreling, flare-ups and dissensions, but we find no testimony of any conduct whatever on the part of appellant sufficient to avoid the condonation and permit appellee to rely upon the alleged acts of cruelty as grounds for divorce. Therefore, since appellee has not made out a case for divorce, the other questions involved in this appeal become unnecessary of decision. The court cannot, in the absence of a decree of divorce, determine property rights, award alimony, or dispose of the custody of the child.

The decree of the circuit court is reversed and the cause is remanded.

*Reversed and remanded.*