**HOLCOMB et al. v. HOLCOMB.**
**No. 11767.**

United States Court of Appeals
District of Columbia Circuit.

Argued June 9, 1953.

Decided Jan. 7, 1954.

Mr. Leonard B. Sussholz, Washington, D. C., with whom Messrs. Abe Max Goldstein and Jacob N. Halper, Washington, D. C., were on the brief, for appellants.

Mr. Leslie C. Garnett, Washington, D. C., with whom Mr. Samuel F. Beach, Washington, D. C., was on the brief, for appellee. Mr. Karl Kindleberger, Washington, D. C., also entered an appearance for appellee.

Before WILBUR K. MILLER, FAHY and WASHINGTON, Circuit Judges.

WILBUR K. MILLER, Circuit Judge. In January, 1945, the appellant, Weldon H. Holcomb, contracted to buy a house and lot in the District of Columbia for $5,850, of which $600 was paid in cash. He assumed a first trust indebtedness of $5,250, payable in monthly instalments. Although the contract provided for conveyance to him and his wife, Julia, the deed, dated February 1, 1945, and recorded February 11, was made to the appellant alone.

Holcomb had become Julia's third husband in the previous July. The purchase of a home indicates the marital venture was going well in January, 1945, but it collapsed about two months later and on March 29, 1945, the Holcombs mutually executed a contract reciting their agreement to live separate and apart, and their desire "to settle all property rights and all claims for maintenance, support and alimony * * *."

The husband agreed to convey the residence to his wife as soon as he should receive a deed "placing title to said property in him," and to transfer the household goods to her. The wife agreed to accept the house and furnishings

"* * * as a total release and discharge of all claims against Weldon H. Holcomb from the date of said transfer of real and personal estate henceforth, for support, maintenance, alimony, dower or any other claim of any nature whatsoever * * *."

Until the transfer had been made, Holcomb was to support his wife and meet the payments on the realty and personalty.

On April 23, 1945, less than a month after executing the separation agreement, Julia S. Holcomb filed suit in the United States District Court for the District of Columbia for an adjudication of property rights and for a limited divorce —two kinds of relief which in this jurisdiction are unrelated, as we shall show.

She did not plead the then very recent separation agreement of March 29 as a basis for asking that property rights be adjudicated. But that contract, apparently the only possible basis for the claim, was put in the record with the husband's answer, and was before the court when a final disposition of the case was made. Hence the complaint and answer together showed the separation agreement as the ground for the demand that property rights be adjudicated.

In Albertson v. Federal Communications Commission, 1950, 87 U.S. App.D.C. 39, 43, 182 F.2d 397, 401, we referred to "the long established rule that a defective pleading may be aided by an opposing pleading," and then said, "Under this rule 'a defect in a pleading, even as to matter of substance, may be aided or cured by the pleading of the adverse party.'" This principle has been judicially described as an elementary rule of practice.[1] See also Cole v. Ralph, 1920, 252 U.S. 286, 290, 40 S.Ct. 321, 64 L.Ed. 567; Texas & New Orleans Railroad Co. v. Miller, 1911, 221 U.S. 408, 416, 31 S.Ct. 534, 55 L.Ed. 789; United States v. Morris, 1825, 10 Wheat. 246, 23 U.S. 246, 285, 6 L.Ed. 314.

Thus it seems clear that when the district judge acted, he had before him a case in which the wife was suing for a limited divorce on the one hand, and, on the other, for an adjudication of property rights under the settlement contract. As shown hereinafter, these were two separate, distinct and unconnected actions.

When the separation agreement was signed, Holcomb moved from the house and left Julia in possession. In the latter part of August, 1945, in the meantime having made payments on the first trust

---

1. Chesney v. Chesney, 1908, 33 Utah 503, 514, 94 P. 989, 993. There the court said:
"Respondent, however, insists that although the demurrer should have been sustained when it was interposed for defects in the complaint, nevertheless, such defects having been cured by the answer, therefore the judgment is supported by the pleadings. This rule has so often been enforced, and its application has become so general, that it may be said to be an elementary rule of practice."

note which aggregated $115.08, Julia stored the furniture, left the house unoccupied, and went to Los Angeles, California, to enter school. Later, when the bank which held the first trust note notified Holcomb the house was vacant and three matured monthly instalments had not been met, he paid the arrearages, took possession of and repaired the house, and later rented it for the ceiling price of $65 per month.

Although she was in California, Julia filed three motions for contempt citations on account of Holcomb's alleged failure to make the maintenance payments,[2] and kept in constant contact with her counsel concerning the case. She did not appear, however, on February 20, 1946, the date to which the action was assigned for trial. On that day the court dismissed the action *sua sponte* and Julia was informed of that fact by her attorney.

She moved from Los Angeles to New York in April, 1947, and worked there as a nurse. Although she claims to have visited the District of Columbia and to have seen her husband in August, 1947, and again in 1948, it was not until February 21, 1951, that she filed the present suit against Holcomb for specific performance of the property settlement provided for in the separation agreement of March 29, 1945, and also asked for maintenance and for an accounting of rents arising from the property during the interim.

The husband answered that Julia had repudiated the property settlement agreement and had permitted her previous suit against him, in which she sought an adjudication of property rights, to be dismissed for want of prosecution. He alleged that, after her departure, he closed the house and it remained unoccupied for about a year; that when he found Julia was no longer a resident of the District and did not intend to rely on the separation agreement, he paid the past due instalments on the trust indebt-

edness, taxes and interest, made repairs and valuable improvements to the house, and reoccupied it. He also alleged that long prior to August, 1948, some of his Washington friends had visited Los Angeles and on their return told him Julia had died. Relying on that information, Holcomb married Anna C. Snipe on August 21, 1948, and thereafter they occupied the house in question until Julia filed the second suit. He counter-claimed for an absolute divorce on the ground of five years' voluntary separation, to which Julia replied that a divorce on that ground should be granted to her instead of to Holcomb, because he had entered into a bigamous marriage and was living in adultery.

Anna C. Holcomb, the second wife, intervened as a party-defendant and filed an answer to Julia's complaint. She alleged she had married Holcomb believing him to be a widower, and believing he was the sole owner of the house and that she had acquired an inchoate right of dower therein. She said that, in reliance upon what she thought was a marriage relation, she paid from her own funds $1,608.37 on the first trust note, $445 on a second trust for $720 which had been placed on the property by Holcomb, and paid or obligated herself to pay the further sum of $937.24 for an oil burner, water heater, and storm windows and doors. These sums aggregate $2,990.61. She charged Julia with laches and prayed either that the complaint be dismissed or that she be adjudged a lien to secure repayment of the sums she had expended on account of the property, if title should be awarded to Julia.

The trial judge found as a fact that the husband and second wife had paid on account of taxes and the first trust the sum of $3,574.92, and that the rental value of the house for the seven years during which it was occupied solely by the husband and the second wife[3] was $5,460.

2. She withdrew one of the motions, and no disposition of the other two was ever made.

3. An obvious inadvertence, as the second marriage was on August 21, 1948. Holcomb did have possession, however, for about seven years after Julia left.

On the basis of these and other findings which we need not quote, the trial judge entered a decree December 16, 1952. He granted Julia S. Holcomb an absolute divorce. He also ordered specific performance of the property settlement set out in the contract of March 29, 1945, appointed a trustee to convey the property to Julia, and gave her judgment against her husband for $5,460, which had been found to be the rental value for seven years, to be credited, however, by the sum of $3,574.92, found to have been paid by the husband and the second wife for taxes and on the first trust indebtedness. In addition, the second wife's intervening petition was dismissed, and the husband was ordered to pay the first wife's attorneys a fee of $1,000. In the absence of supersedeas, the trustee conveyed the real estate to Julia S. Holcomb. Nevertheless, the husband and the second wife appeal.

They say the dismissal of Julia's first suit amounted to *res judicata* as to her right to enforce the property settlement agreement; and they contend she is barred by laches from prosecuting this action to enforce it. Complaint is made of the court's action in awarding the rental value of the real estate to the first wife against the husband, and in denying the second wife's claim for her expenditures and a lien to secure them. The allowance of counsel fee of $1,000 is also attacked.

■ At the outset the appellee argues the case is moot because the real estate in question has already been conveyed to her by the trustee appointed by the court. We cannot agree. Holcomb did not voluntarily comply with the judgment from which this appeal is taken. His failure to supersede the judgment, which is quite understandable in view of the record's disclosure that he is physically disabled and practically penniless, did not affect his right to appeal therefrom. Dakota County v. Glidden, 1885, 113 U.S. 222, 5 S.Ct. 428, 28 L.Ed. 981; O'Hara v. MacConnell, 1876, 93 U.S. 150, 23 L. Ed. 840; Schaeffer v. Drury, 1914, 42 App.D.C. 117; Logan v. Goodwin, 8 Cir., 1900, 104 F. 490.

We turn to the appellant's contention that the dismissal of Julia's first suit, which sought a limited divorce and an adjudication of property rights, amounted to *res judicata* as to her right to sue to enforce the property settlement agreement, and that therefore the decree of specific performance of that agreement in the second suit was erroneously entered. The contention requires us to consider the nature of the first suit and the relation, if any, between the two kinds of relief sought therein, i. e., limited divorce and adjudication of property rights.

Had Julia's first suit been for an adjudication of her rights in her husband's property [4] and nothing more, it is clear that the dismissal thereof would have been an adjudication upon the merits denying her claim to the property under the settlement contract. This result is required by Rule 41(b), Federal Rules of Civil Procedure,[5] as the dismissal was not for lack of jurisdiction nor for improper venue, and the order of dismissal did not "specify otherwise," that is, it did not specify that the dismissal should

---

4. She could have sued on the settlement contract alone, since it was not by its terms contingent upon divorce. Woynicz v. Woynicz, 9 Cir., 1951, 186 F.2d 505; Duell v. Duell, D.C.D.C.1951, 101 F.Supp. 444.

5. In 1946 this rule read as follows:
   "(b) Involuntary Dismissal: Effect Thereof. For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against him. After the plaintiff has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction or for improper venue, operates as an adjudication upon the merits." 28 U.S.C.A.

not be an adjudication upon the merits. See our decision in American National Bank & Trust Co. v. United States, 1944, 79 U.S.App.D.C. 62, 142 F.2d 571.[6]

But Julia's first suit sought not only an adjudication of property rights but a limited divorce as well. The question is, therefore, whether the dismissal of the divorce action deprived the court of jurisdiction over the property rights action. Put in another way, the question is whether her claim to her husband's property under the settlement contract depended upon her claim to a limited divorce, so that when the divorce action was dismissed the claim to the property simply failed with it. Put in still another way, the question is whether the claim to an adjudication of property rights was merely a claim of permanent alimony which cannot be granted when a divorce is denied; or whether it was a separate unrelated cause of action.

[3] In some jurisdictions, courts are authorized to award a husband's individually-owned property to his wife by way of alimony. It has frequently been held in such states that a court cannot give a husband's property to the wife if a divorce is denied.[7] Such decisions simply apply the familiar principle that alimony is an incident of divorce and cannot be awarded if a divorce is denied.

There is no statute in the District of Columbia authorizing the court to give a husband's property to his wife as an award of alimony, and we have held that a wife who sues for divorce cannot obtain, as a mere incident thereof, an adjudication of property rights. Wheeler v. Wheeler, 1951, 88 U.S.App.D.C. 193, 188 F.2d 31; Keleher v. Keleher, 1951, 89 U.S.App.D.C. 266, 192 F.2d 601. In the Wheeler case we said a wife must have a legal or an equitable interest in her husband's property before she can have an adjudication of her rights therein. A wife's right to such an adjudication, therefore, does not flow from her right to a divorce, but must be based upon a claim of title wholly independent of divorce and the concomitant award of permanent alimony.

It follows that a wife's suit to assert a right in her husband's property is distinct from and unrelated to her suit for divorce. Nevertheless two such actions may be joined, under Rule 18(a), Federal Rules of Civil Procedure, as we held in Reilly v. Reilly, 1950, 86 U.S. App.D.C. 345, 346, 182 F.2d 108, 109, when we said:

"In this case, agreeably to rule 18(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., the general equity powers of the court were invoked by joining in a single action prayers for a limited divorce and for adjudication of an existing dispute between the parties concerning property rights. [Cases cited.]"

█ From what has been said we conclude that in the first suit Julia Hol-

---

6. And in Woods v. Cannaday, 1946, 81 U. S.App.D.C. 281, 282, 158 F.2d 184, 185, we said:

"* * * We have held often enough not to require repetition that res judicata applies not only to points on which the court was actually required to pronounce judgment, but, as well, to every point which properly belonged to the subject of the controversy and which the parties, in the exercise of reasonable diligence, might have brought forward at the time. See United States ex rel. Donner Steel Co. v. Interstate Commerce Comm., 56 App.D.C. 44, 8 F.2d 905; Nalle v. Oyster, 36 App.D.C. 36."

7. E.g. Benson v. Benson, 1915, 45 Utah 514, 146 P. 564; Smith v. Smith, 1917, 179 Iowa 723, 161 N.W. 698; Miller v. Miller, 1923, 200 Ky. 648, 255 S.W. 101; Schaffer v. Schaffer, 1926, 114 Ohio St. 309, 151 N.E. 186; Harkness v. Harkness, Tex.Civ.App.1927, 1 S.W.2d 399; McPherson v. McPherson, 1939, 200 Wash. 365, 93 P.2d 428; Gasior v. Gasior, 1940, 67 Ohio App. 84, 35 N.E.2d 1021; Bingmer v. Bingmer, Ohio App. Franklin County, 1944, 67 N.E.2d 102; Rivard v. Rivard, 1944, 70 R.I., 305, 38 A.2d 771; Gooden v. Gooden, 1947, 180 Or. 309, 176 P.2d 634; Ollman v. Ollman, 1947, 396 Ill. 176, 71 N.E.2d 50; Oswald v. Oswald, 1949, 326 Mich. 238, 40 N.W.2d 135.

comb properly joined an action for limited divorce with an action for an adjudication of property rights, but that the latter did not depend upon the former; that the denial of a limited divorce did not deprive the court of jurisdiction to enforce the settlement contract; and that consequently the dismissal of the suit insofar as it sought a property adjustment was a decision on the merits, under Rule 41(b).

Since Julia's claim to specific performance of the contract was foreclosed by the dismissal of her first suit, we need not decide whether she was guilty of laches in waiting almost six years before suing on the 1945 contract; or whether the doctrine of laches applies between spouses, a question which has never been determined in this jurisdiction.

The judgment of the District Court, including the allowance to appellee's attorneys, will be set aside except as to the grant of an absolute divorce, and the cause will be remanded. Thereupon, a new judgment should be entered, dismissing Julia's complaint, and appointing a trustee to convey the real estate to Weldon H. Holcomb. Julia should recover of him the sum of $115.08, the amount she paid in 1945 on the first trust indebtedness, with interest from the dates of payment. She should also recover of Holcomb the sum of $225 for temporary maintenance from June, 1945, to February, 1946, both months inclusive, credited by $175 already paid thereon, with interest on the balance from January 1, 1946. Costs should be adjudged against Weldon H. Holcomb and Julia Holcomb, each to pay one-half of the total.

The court should allow a fee to Julia's counsel for services rendered in obtaining the divorce but should take into account Holcomb's financial condition. The second wife, Anna, should be allowed to recast her pleading, should she desire to do so, so as to claim from Holcomb repayment of the sums expended by her on account of the realty, or a lien thereon to secure repayment; and such claim, if asserted, should be heard and determined.

Reversed and remanded.

FAHY, Circuit Judge (concurring).

In concurring with Judge MILLER I desire to add a word. Rule 41(b) requires us to consider the dismissal of the first suit as an adjudication upon the merits. To hold that that adjudication included, in the situation here presented, Julia's claim to specific performance against the defendant of the contract which then existed between them respecting the house property, is not likely, it seems to me, to have the untoward consequences suggested in the opinion of Judge Washington.

WASHINGTON, Circuit Judge (concurring).

I concur in the result, because I think Julia Holcomb is barred by laches. She waited nearly six years before suing on the contract: that is too long. Hurdle v. American Security & Trust Co., 1929, 59 App.D.C. 58, 32 F.2d 954; see Galliher v. Cadwell, 1892, 145 U.S. 368, 12 S.Ct. 873, 36 L.Ed. 738. The general rule is said to be that laches may not be invoked in a suit between spouses. See Note, 121 A.L.R. 1382 (1939). But the reason for the rule—to preserve domestic tranquillity—has no application here. Where spouses have been separated throughout the entire span of the delay the better reasoned cases hold that the doctrine of laches may be applied. Dunham v. Adams, 1913, 82 N.J.Eq. 265, 88 A. 696; see Note, 121 A.L.R. at 1399 (1939).

But I think the court errs in saying that Mrs. Holcomb is barred by res judicata. She did not, in the body of her 1945 complaint, say anything about the separation agreement, or about any property dispute. She simply asked, in her prayer for relief, "that property rights be adjudicated herein." That simple prayer certainly does not rise to the dignity of an independent action for ad-

judication of property rights in particular items of realty or personalty. Cf. Reilly v. Reilly, 1950, 86 U.S.App.D.C. 345, 182 F.2d 108. The complaint cannot fairly be read to make it so. And the husband's answer was, at best, equivocal. He denied cruelty and desertion on his part, and that he had "failed to furnish the plaintiff with means to secure support and maintenance." His answer, under the heading "New Matter," then alleged that the parties had voluntarily separated, pursuant to the agreement of March 29, 1945, which was attached as an exhibit; that the wife was in possession of the house on Sheriff Road, pursuant to the agreement; that she had sold much of the furniture in the house, and that if not restrained she would dispose of the remainder. In conclusion the answer prayed that the wife be required to quit the Sheriff Road premises and to give possession thereof to the husband, and that she be restrained from selling the furniture. Prayer was also made for such other and further relief as to the court might seem just and proper.

The District Court dismissed the complaint for lack of prosecution. The order merely recited that the plaintiff should "go without day." Certainly this order served to deny a divorce to the plaintiff and, no doubt, under Rule 41 (b) is a decision on the merits insofar as divorce is concerned. But there is no sound reason why it should be considered an adjudication in favor of the husband on the question of property rights generally or the Sheriff Road property in particular. The husband's answer asked for possession of the property and asked that appellee be restrained from selling the furniture. But when the complaint was dismissed for want of prosecution no order was entered granting the relief that the husband requested in his answer. No order was entered relieving the husband from any of his obligations under the separation agreement. No order was entered disturbing plaintiff's possession of the premises. In this situa-

tion, how can it possibly be said that the District Court had made any adjudication on the question of property rights —much less that it held on the merits that the husband was entitled to possession, that the wife had no claim to the property, and that the separation agreement was not a binding contract? On the contrary, the District Court could reasonably have supposed that the parties had become reconciled, or that they had decided to remain separated without changing the status quo. Either alternative is far more reasonable than to suppose that the District Court intended to grant affirmative relief to the husband, and simply failed to enter an order doing so. For this court to conclude that the District Court did in fact decide a property question in favor of the husband seems startling, to say the least. The opinion in effect holds that where a wife's complaint for divorce includes a general prayer for adjudication of property rights, and the action is dismissed for lack of prosecution, the wife is forever precluded from claiming any property to which the husband has asserted ownership in his answer—or perhaps any property at all. Title searchers face a new hazard if they must henceforth search the files for dismissed divorce petitions.

True, it may be that in an ordinary litigation, between persons dealing at arm's length, pleadings and proceedings comparable to those described above would justify a court in holding a subsequent action barred by res judicata. But this was an action between husband and wife: a divorce action. Important reasons of public policy dictate the application of different criteria here. The courts should, where possible, encourage the dropping of divorce suits. And certainly a wife should not be unnecessarily penalized for so doing. The terrible inequity of allowing the husband all property to which he asserts a claim where a divorce suit is dropped or simply neglected by the wife seems obvious. It is difficult to believe that a judge dismiss-

ing a suit for divorce intends such a result.

When a divorce is denied the hope at least is that the parties will mend their differences. Particularly is this true where—as here—the divorce action was brought soon after the period of separation and estrangement between the spouses had begun. For the court to make a general adjudication of property rights—determining who owns each piece of property—at this crucial moment in the relationship would almost inevitably raise a barrier to reconciliation. No sensible court, it seems to me, would consider doing so in the absence of strong representations from one (or preferably both) of the parties. Nothing of that sort appears in the present case.

The fair inference from a suit for divorce with a prayer for a general property adjudication attached is, I think, that the property is to be divided when, and if, the parties are legally adjudicated to be no longer man and wife. For this reason, and for others given above, courts all over the country have established and followed the rule that after denial of a divorce the court is without jurisdiction to determine the ancillary question of the property rights of the parties.[1] The divorce is properly considered the basis of the action, and, when dismissed, the rest of the case must automatically be dismissed also. It is dismissed, not because the court has determined that the plaintiff is entitled to no property, but because the court may not even consider the question.

But even if this principle is to be rejected in the District of Columbia, and jurisdiction found to adjudicate property claims where divorce is denied, surely this jurisdiction is not mandatory. In view of the strong equities and policies described above it cannot be the law that in all cases where a prayer for a general property adjudication is coupled with a suit for divorce the court, where divorce is denied, must adjudicate all the property rights of the parties. If jurisdiction is there it must be discretionary. And the trial court should not be taken to have asserted its jurisdiction unless it gives a clear indication that it has done so. A fortiori this should be true where the suit is simply dismissed for want of prosecution. Here there was no clear indication on the point, or indeed, any indication at all. Surely, in such a situation, it cannot properly be held that the trial court has not only taken jurisdiction but has adjudicated all property claims in favor of the husband.

1. E.g., Miller v. Miller, 1923, 200 Ky. 648, 255 S.W. 101; Oswald v. Oswald, 1949, 326 Mich. 238, 40 N.W.2d 135; Gasior v. Gasior, 1940, 67 Ohio App. 84, 35 N.E.2d 1021; Benson v. Benson, 1915, 45 Utah 514, 146 P. 564; see Ollman v. Ollman, 1947, 396 Ill. 176, 71 N.E.2d 50; Schaffer v. Schaffer, 1926, 114 Ohio St. 309, 151 N.E. 186; Gooden v. Gooden, 1947, 180 Or. 309, 176 P.2d 634; Rivard v. Rivard, 1944, 70 R.I. 305, 38 A.2d 771; Harkness v. Harkness, Tex.Civ.App.1927, 1 S.W.2d 399; McPherson v. McPherson, 1939, 200 Wash. 365, 93 P.2d 428. See also Nelson, Divorce and Annulment § 14.109 (2d ed. 1945): " * * * ordinarily a division of the property of the spouses is not allowable where a divorce is denied."