**HAWAIIAN PARADISE PARK CORPORATION, a Hawaii corporation, Appellant,**

v.

**FRIENDLY BROADCASTING CO., Inc., an Ohio corporation, Appellee.**

**No. 22394.**

United States Court of Appeals
Ninth Circuit.
July 24, 1969.

See also D.C., 282 F.Supp. 464.

**752**

John Jubinsky (argued), and Galen C. K. Leong of Stephenson, Ashford & Wriston, Honolulu, Hawaii, for appellant.

William H. Dodd (argued), of Fong, Miho, Coy & Robinson, Honolulu, Hawaii, for appellee.

Before HAMLEY, MERRILL and ELY, Circuit Judges.

HAMLEY, Circuit Judge:

Hawaiian Paradise Park Corporation (Hawaiian) entered into a contract with United Broadcasting Company, Inc. (United) for the sale of Hawaiian's Honolulu television station. United subsequently assigned its interest in the contract to Friendly Broadcasting Co., Inc. (Friendly). Hawaiian later declined to consummate the sale. Friendly then brought this diversity action against Hawaiian for injunctive relief and specific performance. Following a trial, judgment was entered for plaintiff and defendant appeals.

We are confronted at the outset with Friendly's motion to dismiss the appeal on the ground that Hawaiian has waived its right to appeal by reason of its course of conduct after entry of the judgment.

Pending appeal, Hawaiian did not attempt to stay the district court judgment by filing a supersedeas bond or otherwise. Instead, acting through its counsel, it proceeded diligently to prepare and approve all necessary documents and to assist with all other details necessary to effect closing of the sale. In this connection a number of supplemental agreements were entered into which, at least in Friendly's view, were not required of Hawaiian under the judgment.

A failure to move for a stay of judgment pending an appeal does not ordinarily affect the right to appeal. See O'Hara v. MacConnell, 93 U.S. 150, 154, 23 L.Ed. 840; Holcomb v. Holcomb, 93 U.S.App.D.C. 242, 209 F.2d 794. Both of these cases involved the transfer of property by deed and reversal would have presented, as our case would present, difficult problems in restoring the parties to their former positions.

However, when a party accepts the benefits of a judgment under circumstances which indicate an intention to finally compromise and settle a disputed claim, an appeal may be foreclosed. In such a case, it is " * * * the mutual manifestation of an intention to bring the litigation to a definite conclusion upon a basis acceptable to all parties" which bars a subsequent appeal, and not the fact, standing alone, that benefits under the judgment were accepted. Gadsden v. Fripp, 4 Cir., 330 F.2d 545, 548.

It seems to us that, throughout all of the negotiations between the parties in closing the sale, there was enough indication of Hawaiian's purpose to reserve its right to appeal, and of Friendly's knowledge of that purpose, to negate any mutual manifestation of an intention to bring this litigation to a conclusion. Accordingly, the motion to dismiss the appeal is denied.

A statement of background facts will be helpful in discussing the merits of the appeal.

Under the contract of sale, dated January 7, 1966, Hawaiian agreed to sell to United all of the fixed and tangible assets of Hawaiian used or useful in the operation of station KTRG–TV, Honolulu. As a part of the contract, Hawaiian also agreed to assign to United certain leases, contracts and agreements, and licenses issued by the Federal Communications Commission (FCC) for the operation of the station.

Hawaiian could not assign its FCC licenses to the buyer without the written consent of the FCC. Accordingly, the contract provided that the buyer and seller would join in an application to the FCC for such consent. Paragraph 10 of the contract provides that the closing date of the contract shall be within forty-five days from the date the FCC approves the application. By agreement this forty-five-day period was later reduced to five days. Paragraph 11 provides that if the closing date does not occur within twelve months from the date of filing the application with the FCC, either party may terminate the agreement on five days written notice to the other, provided such notice of termination is given prior to Commission consent. This paragraph further provides that if FCC approval of the transfer is not obtained within fifteen months from the date of filing the application, the contract may be terminated at the option of either party.

The application for consent to transfer the license was filed with the FCC on February 3, 1966. Accordingly, under the contract, if the sale was not consummated by February 3, 1967, and if the FCC had not approved by that date, either party could terminate the transaction upon five days notice. The parties originally contemplated that it would be possible to complete the sale within from sixty to 120 days. However, Friendly soon encountered difficulties in satisfying the FCC requirements and, on September 30, 1966, the FCC ordered a hearing on the application.

The details of the transaction, including proceedings before the FCC, were handled in Washington, D.C., by Friendly's attorney, Paul Dobin, and by Hawaiian's attorney, A. Harry Becker. When the FCC application was designated for hearing, both Dobin and Becker came to doubt that FCC approval could be obtained prior to February 3, 1967.

In an effort to obtain agreement on an extension of the contract time for closing the sale, Dobin prepared a document entitled "Supplement to Agreement," which was signed by Richard Eaton, president of Friendly, and sent to Becker. Under this proposed agreement, the contract of sale would not be terminable until December 31, 1967, if a final decision by the FCC on the application had not been made before that date. In addition, the agreement provided that if the FCC approved the assignment and the sale were consummated, Friendly would indemnify Hawaiian for all net out-of-pocket losses up to $35,000 incurred in the operation of the television station from September 28, 1966, until the granting of the application. The $35,000 was to be paid upon execution of the supplement by way of a loan secured by a chattel mortgage on the physical assets of the television station.

Becker, in Washington, D.C., sent the supplemental agreement to David Watumull, president of Hawaiian, in Honolulu, for execution. Watumull rejected the proposed agreement and so informed Becker in a telephone conversation on December 7, 1966.

The hearings before the FCC examiner commenced on December 8, 1966, and concluded on January 13, 1967. In the meantime, following several conversations with Becker, Dobin wrote a letter to Becker, dated December 16, 1966, setting out the terms of a proposed agreement for extending the contract time for closing the sale. Becker indicated agreement on behalf of Hawaiian by

signing the letter and returning it to Dobin.[1]

Dobin filed the letter with the FCC as part of the application. Neither he nor Becker sent a copy of the letter to Watumull in Honolulu, and Hawaiian contends that Watumull was not otherwise informed of the existence of the letter at that time. FCC approval was not obtained by February 3, 1967, and therefore, under the terms of the original contract, Hawaiian's right to terminate the transaction matured on that date, contingent upon the giving of five days notice.

Watumull made no immediate effort to terminate. Two and a half months later, however, on April 17, 1967, Watumull wrote to Friendly, giving five days notice that the agreement of January 7, 1966 was terminated pursuant to paragraph 11 of the agreement. Dobin replied for Friendly on April 19, 1967, calling attention to the December 16, 1966 letter-agreement and stating that Hawaiian had no right to terminate at that time. According to Hawaiian, this was the first time Watumull had heard of the December 16, 1966 letter-agreement.

This suit was commenced by Friendly on May 3, 1967, while the FCC application was still pending. Friendly initially sought only injunctive relief since the contract was not yet ripe for closing.

On May 24, 1967, Friendly amended its complaint to pray for specific performance of the contract. A trial was had, beginning May 31, 1967. Thereafter, on June 30, 1967, the district court entered findings of fact, conclusions of law, and a judgment amounting to a preliminary injunction, enjoining Hawaiian from interfering with the proceedings before the FCC or otherwise interfering with Friendly's rights under the contract of sale. In its findings and conclusions, the district court specifically determined that Hawaiian was bound by the letter-agreement of December 16, 1966. Hawaiian appealed from that judgment but that appeals was dismissed by agreement of the parties.

The initial decision of the FCC examiner, consenting to the transfer of the license, was rendered on July 27, 1967. The decision became final on September 15, 1967. On that same day, and as soon as it was known that FCC approval had become final, Hawaiian filed in this case a copy of a registered air mail letter addressed to Friendly, dated September 15, 1967, giving notice of termination of the contract of sale, as amended by the letter of December 16, 1966. In this letter Hawaiian asserted that it did not agree

1. This letter reads as follows:
"December 16, 1966
"A. Harry Becker, Esq.
Pennsylvania Bldg.
Washington 4, D. C.
"Dear Harry
"This will serve to reduce to writing the understanding between Hawaiian Paradise Park Corporation and United Broadcasting Company, Inc. and Friendly Broadcasting Company in connection with the pending application to assign the license of Station KTRG–TV to Friendly.
"In consideration of our going forward promptly and diligently with the hearing and the prosecution of the application, Hawaiian Paradise has agreed not to terminate the pending sales agreement until such time as an initial decision shall be issued by the Examiner. If that decision should recommend a denial of the application, Hawaiian Paradise would be free to give Friendly notice of cancellation of the agreement. However, if the decision is favorable, you would not terminate the agreement until a final decision is rendered by the Commission.
"Friendly has also agreed to reimburse Hawaiian Paradise for any legal expenses which it may incur in connection with the hearing. Such responsibility shall, however, not exceed $7500.00.
"If this accurately reflects our agreement, would you indicate your approval by signing below and returning your signed copy of the letter to me.
"Sincerely
/s/ Paul Dobin
Paul Dobin
Counsel for Friendly Broadcasting Company
"Agreed:
/s/ A. Harry Becker
A. Harry Becker
Counsel for Hawaiian Paradise Park Corporation."

with the court's prior decision that Hawaiian was bound by the December 16, 1966 letter. However, inasmuch as the court had so ruled, Hawaiian stated that it gave notice of termination under what it regarded as the "clear terms" of the December 16 letter.

Hawaiian thereupon orally moved in the district court for an order vacating the preliminary injunction and dismissing the action. This motion was renewed in writing on September 18, 1967. A hearing took place on this motion and other matters, including Friendly's prayer for specific performance. On September 19, 1967, the district court entered a final judgment denying Hawaiian's motion, continuing in effect relevant portions of the preliminary injunction, and granting Friendly specific performance of the contract of sale. This appeal followed.

The first question on the merits presented on this appeal is whether, as the trial court found and concluded, Hawaiian is bound by the letter-agreement of December 16, 1966, extending the time for closing the transaction. Hawaiian contends that it is not bound by that instrument because its attorney, Becker, was without either actual or apparent authority to sign it on behalf of Hawaiian.

An agent, in this case Becker, has power to bind his principal only if he has actual or apparent authority to do so. Actual authority may be express or im-

plied. As to any act specifically mentioned in a communication, written or oral, between the principal and his agent, the agent is said to have express authority. If, on the other hand, the principal merely states the general nature of what the agent is to do, the agent is said to have implied authority to do acts consistent with the direction. Seavey, Law of Agency, § 8(C), at 12. See also Restatement of Agency (Second), § 7, comment (c), at 29–30. The determination of whether a principal has actual authority, express or implied, is primarily one of fact. See Pinole Land Company v. Baker, 9 Cir., 287 F.2d 828, 830–831; Seavey, Law of Agency, § 16, at 29–30.

The trial court found that Becker had actual authority, both express and implied, to enter into the December 16, 1966 agreement to extend the closing date. The first sentence of the court's finding No. 39, quoted in the margin, pertains to express authority.[2] The second sentence of that finding pertains to implied authority. We also quote in the margin additional findings of fact supporting the court's basic finding that Becker had actual implied authority.[3]

Hawaiian contends that both facets of this finding are clearly erroneous. There is a great deal of evidence, documentary and testimonial, relevant to these questions of fact. For the most part this evidence relates to the dealings, prior to December 16, 1966, be-

---

2. "39. At the time Mr. Becker signed the letter of December 16, 1966 (Exhibit P–6), he had express authority from Defendant to do so, which authority did not need to be in writing. Mr. Becker had good reason to believe that he had the authority to sign this December 16, 1966 letter on behalf of his client and that his client was agreeable to the kind of agreement he (Mr. Becker) was signing."

3. "41. It is clear that Defendant and Mr. Becker had established the procedure of communicating primarily by telephone; that Mr. Watumull would telephone Mr. Becker with requests or instructions; that Mr. Becker would attempt to carry out the requests or instructions; and that Mr. Becker would report the results

or get confirmation of his actions through another call to Mr. Watumull.

"45. Mr. Becker did thoroughly discuss the agreement set forth in the December 16, 1966 letter (Exhibit P–6) with Mr. Watumull; he did tell Mr. Watumull that there was an agreement that bound Defendant to stay in the FCC proceedings until a decision; and he did explain to Mr. Watumull in detail, and on several occasions, what it meant to stay in until a decision. Mr. Becker believed, and had a reason to believe, that Mr. Watumull understood that Defendant was bound to stay in the FCC proceedings until a decision and what was meant by staying in the proceedings until a decision."

tween Watumull, president of Hawaiian, and Becker, Hawaiian's Washington, D. C. attorney, concerning the sale transaction and the obtaining of FCC approval.

Granting that the question of fact is a close one and that the trial court might have been warranted in finding to the contrary, we conclude from our study of the record that the finding that Becker had actual implied authority to enter into the December 16, 1966 letter-agreement is not clearly erroneous.

The trial court also found that Becker had apparent authority to enter into the December 16, 1966 extension agreement.[4] Hawaiian argues that this finding of fact is clearly erroneous.

■ Apparent authority results when the principal does something or permits the agent to do something which reasonably leads another to believe that the agent had the authority he purported to have. Nelson v. New Hampshire Fire Ins. Co., 9 Cir., 263 F.2d 586, 588; Restatement of Agency (Second), § 8, Comment (a), at 31; Seavey, Law of Agency, § 8(D), at 13. In determining whether there was apparent authority, the factual inquiry is the same as in the case of actual implied authority, except that the principal's manifestations to the third person are substituted in place of those to the agent. Restatement of Agency (Second), § 8, at 31.

■ The principal's manifestations giving rise to apparent authority may consist of direct statements to the third person, directions to the agent to tell something to the third person, or the granting of permission to the agent to perform acts and conduct negotiations under circumstances which create in him a reputation of authority in the area in which the agent acts and negotiates. Seavey, Law of Agency, § 8, at 13. In this case we are concerned primarily with the latter type of conduct.

■ Much evidence was received concerning the acts Becker was specifically authorized to perform. There was also much evidence adduced concerning the indicia of Becker's authority which Dobin did, and a reasonable person in the same circumstances could, attach to the performance of those acts by Becker. Perhaps another trial judge could have found, on the basis of this evidence, that Becker did not have apparent authority to enter into the December 16, 1966 agreement. Our review of the relevant part of the record convinces us, however, that such a finding was not required, and that finding to the contrary is not clearly erroneous.

The second general argument advanced by Hawaiian on this appeal relates to the proper interpretation to be placed upon the agreement of December 16, 1966, quoted in note 1, above.

On July 27, 1967, the FCC examiner's initial decision was released; it approved the transfer of the license. The decision became final on September 15, 1967. On the latter date, Hawaiian gave notice of the termination of the contract of sale. This represented a determination by Hawaiian that since the initial decision of the examiner was favorable, the right of Hawaiian to terminate the contract of sale under the above-quoted terms of the December 16 agreement was postponed only until the final FCC decision whereupon the right could then be exercised *even though that final deci-*

---

4. On the question of apparent authority, the trial court found:

"42. Mr. Dobin and Mr. Becker knew, whenever a prompt response was needed from Defendant in Honolulu, that a telephone call was necessary. Mr. Dobin also knew that Mr. Becker's instruction(s) from Defendant almost always came by telephone; so, he believed, and had a right to believe, that most of Mr. Becker's instructions came by telephone from Mr. Watumull and were, accordingly, acted upon by Mr. Becker. The procedure having thus been established by Defendant and Mr. Becker, Mr. Dobin had a right to rely on what Mr. Becker told him based on his (Mr. Becker's) numerous telephone conferences with Mr. Watumull.

"43. Under the totality of all the circumstances, Mr. Dobin believed, and had the right to believe, that Mr. Becker had the authority to sign the December 16, 1966 letter agreement (Exhibit P–6), that Mr. Becker did sign it, and that it did bind Defendant."

*sion was favorable to the application.* Friendly, on the other hand, construes the above-quoted words as meaning that if the final FCC decision is favorable, Hawaiian did not have an immediate right to terminate, and Friendly had five days within which to close the transaction.

The trial court, construing the December 16 agreement in the context of the entire transaction, accepted Friendly's interpretation and held that, since the final FCC decision was favorable, Friendly had five days thereafter within which to close the deal. Hawaiian's termination notice of September 15, 1966, the court in effect held, prevented Friendly from closing within the allotted time.

Hawaiian contends that this ruling is erroneous because the paragraph in question is clear and unambiguous and the trial court therefore had no power to resort to construction or interpretation.

We agree with the view apparently held by the trial court that the December 16, 1966 agreement is not clear and unambiguous. That agreement provides for a right of termination referenced to the examiner's initial decision, and a right of termination referenced to the final decision. With regard to the former, the agreement provides (1) Hawaiian will not terminate "until" issuance of the initial decision, (2) if the initial decision recommends denial of the application for transfer, Hawaiian may *immediately terminate,* and (3) *if the* initial decision is favorable, Hawaiian may not immediately terminate. With regard to the right of termination referenced to the final decision, the agreement provides, as a counterpart to (1) above, that if the initial decision is favorable, Hawaiian may not terminate "until" a final decision is rendered. However, the agreement does not expressly complete the arrangement, as in (2) and (3) above, by stating whether Hawaiian then had an absolute right to terminate or whether, as in the case of the preceding termination provision, the immediate right to terminate existed only if the final decision is unfavorable.

If the part of this agreement which is referenced to the final decision stood alone, the use of "until" might well indicate that Hawaiian's right to terminate was not dependent upon whether the decision was favorable or unfavorable. But in the preceding sentences "until" is used only to specify a time when Hawaiian could terminate *if FCC action was unfavorable.* It is this circumstance which, it seems to us, interjects an ambiguity, namely, did the parties inadvertently overlook completion of the formula for termination or did they, departing from the formula they had followed in the preceding sentences, intend Hawaiian to have the right to terminate without regard to the nature of the final decision.

We hold, therefore, that it was entirely proper for the trial court to construe the December 16 agreement in light of the entire transaction. We doubt whether there is much room here to apply the general rule, relied upon by Hawaiian, that an agreement must be construed most strongly against the party who drew it, such party being in this case Friendly. The problem before us is not so much one of giving a word or a clause one meaning or another, but of determining whether there should be *read into the agreement an additional* provision which the parties inadvertently omitted, necessary to give the agreement meaning.

Hawaiian also argues that the trial court's construction of the December 16, 1966 agreement is erroneous because the court failed to consider material evidence in placing a meaning upon the language used.

■ We do not agree. As previously stated, and as evidenced by both the intention of the parties throughout the transaction and the part of the agreement relating to the initial decision, the manifest purpose of postponing a right of termination until the final decision was to afford Friendly an opportunity to close the deal if the final decision were favorable. Absent such a purpose, there does not seem to be a very good reason why Hawaiian's right of termina-

tion should not have accrued as soon as the initial decision was rendered, whether that decision was favorable or unfavorable.

Hawaiian's final contention on this appeal is that Friendly did not sustain its burden of proof on the question of whether it was entitled to specific performance.

■ Where there has been a threatened or actual breach of a contract of sale, the determination of whether specific performance should be granted rests within the sound discretion of the trial court. McFarland v. Gregory, 2 Cir., 322 F.2d 737; 5A Corbin on Contracts, § 1136, pages 92–96.

■ The property to be sold under the contract here in question was unique in the sense that it pertained to one of only four television stations in Honolulu. Presumably the station in question had both programming, and an established clientele of viewers, not wholly shared by the other Honolulu stations. We do not think Friendly was required to prove it could not buy one of the other Honolulu stations before it could enforce the contract in question. All we need to hold, and do hold, however, is that the trial court did not abuse its discretion in decreeing specific performance.

Affirmed.